IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

JACKLIN ROMEO, SUSAN S. RINE,
and DEBRA SNYDER MILLER, individually
and on behalf of others similarly situated,

        Plaintiffs,

v.

ANTERO RESOURCES CORPORATION.

        Defendant.

Civil Action No. 1:17-cv-88
Judge Keeley

---

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jacklin Romeo, Susan S. Rine, and Deborah Snyder Miller ("Plaintiffs"), on behalf of themselves and the Class defined below, for their second amended class action complaint against Defendant Antero Resources Corporation ("Antero"), pursuant to Fed. R. Civ. P. 15(a)(2), allege as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this class action case pursuant to 28 U.S.C. § 1332(d)(2), because the dollar amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and because this is a class action in which one or more members of the proposed Class is a citizen of states other than Colorado and Delaware, which are the two states of citizenship for Defendant Antero.

2.      This Court has personal jurisdiction over Antero because Antero has conducted substantial business activities in the state of West Virginia, and because the acts and conduct of

Antero giving rise to the claims asserted in this class action Complaint occurred in the state of West Virginia.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this class action Complaint occurred in this judicial district.

## PARTIES

4.     Plaintiff Jacklin Romeo is a citizen of the State of West Virginia, residing at 79 Whispering Pine Lane, Bridgeport, West Virginia 26330. Ms. Romeo has received royalty payments from Antero on certain oil and natural gas mineral interests located in Doddridge County, West Virginia, and pursuant to the lease attached hereto as Exhibit 1, dated March 14, 1984, and the lease dated December 30, 1983, Book 134, Page 207, which contains identical royalty language and concerns the same land as referenced in the lease attached hereto as Exhibit 1.

5.     Plaintiff Susan S. Rine is a citizen of the State of Florida, residing at 11127 Dormie Dr., San Antonio, Florida 33576. Ms. Rine has received royalty payments from Antero on certain oil and natural gas mineral interests located in Harrison County, West Virginia, and pursuant to the lease attached hereto as Exhibit 2, dated October 19, 1979.

6.     Plaintiff Deborah Snyder Miller is a citizen of the State of Florida, residing at 10115 Deer Lane, New Port Richey, Florida 34654. Ms. Miller has received royalty payments from Antero on certain oil and natural gas mineral interests located in Harrison County, West Virginia, and pursuant to the lease attached hereto as Exhibit 2, dated October 19, 1979.

7.     Both of the above-referenced leases (Exhibits 1 and 2) are among the Royalty Agreements defined in Paragraph 9 of this second amended class action complaint.

8.     Defendant Antero is a Delaware corporation, with its principal place of business located at 1615 Wynkoop Street, Denver, Colorado 80202.

## CLASS DEFINITION

9.     Plaintiffs bring this action on behalf of themselves and the Class of similarly situated persons and entities, pursuant to Fed. R. Civ. P. 23(b)(3), consisting of:

> Persons and entities, including their respective successors and assigns, to whom Antero has paid royalties or overriding royalties (collectively, "Royalties") on Natural Gas, including natural gas liquids, produced by Antero from wells located in West Virginia at any time since June 1, 2007, pursuant to leases or overriding royalty agreements ("Royalty Agreements") which do not expressly permit the deduction of costs ("post-production costs") incurred between the wellhead and the point of sale of marketable gas products to place the gas into a marketable condition and deliver such gas products to the market ("the Class").

> The Class excludes: (1) agencies, departments, or instrumentalities of the United States of America; (2) publicly traded oil and gas exploration companies; (3) any person who is or has been a working interest owner in a well produced by Antero in West Virginia; and (4) Antero.

## CLASS ACTION ALLEGATIONS

10.     Each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) Class is satisfied in this case.

### A. NUMEROSITY – Federal Rule of Civil Procedure 23(a)(1)

11.     The members of the Class are so numerous that separate joinder of each member of the Class is impractical.   On information and belief, there are more than five hundred members of the defined Class, who reside in numerous states throughout the United States.

### B. COMMONALITY – Federal Rule of Civil Procedure 23(a)(2)

12.    Common questions of law and fact exist as to the claims of the Plaintiffs and the defined Class. These common legal and factual questions include, without limitation, the following:

      a.   Whether Antero has a duty under the Royalty Agreements to pay royalties to Plaintiffs and the Class based upon prices received on the sale of marketable residue gas at the point of sale to third party purchasers?

      b.   Whether Antero has breached its obligations under the Royalty Agreements by failing to pay royalties to Plaintiffs and the Class based upon the prices received on the sale of residue gas to third party purchasers?

      c.   Whether Antero has a duty under the Royalty Agreements to pay royalties to Plaintiffs and the Class based upon prices received on the sale of marketable natural gas liquids at the point of sale to third party purchasers?

      d.   Whether Antero has breached its contractual obligations under the Royalty Agreements by failing to pay royalties to Plaintiffs and the Class based upon prices received on the sale of marketable natural gas liquids at the point of sale to third party purchasers?

      e.   Whether Antero has breached its obligations under the Royalty Agreements by deducting various post-production costs from the sales price of the marketable natural gas products (including residue gas and natural gas liquid products) in the calculation and payment of royalties to Plaintiffs and the Class?

**C.  TYPICALITY – Federal Rule of Civil Procedure 23(a)(3)**

13.    Plaintiffs' claims are typical of the claims of the members of the Class.

**D.  ADEQUACY OF REPRESENTATION – Federal Rule of Civil Procedure 23(a)(4)**

14.    The Plaintiffs will fairly and adequately protect the interests of the Class, and have retained counsel who are experienced in prosecuting class action royalty underpayment lawsuits against natural gas producers.

**E.  PREDOMINANCE AND SUPERIORITY – Federal Rule of Civil Procedure 23(b)(3)**

15.     The questions of law and fact which are common to the Class predominate over any individual questions which may exist.

16.     A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Class members against Antero.

### FACTUAL BACKGROUND SUPPORTING THE CLAIMS OF PLAINTIFFS AND THE CLASS

17.     Plaintiffs and the Class are parties to Royalty Agreements under which Antero has paid royalties to them on gas produced by Antero from wells located in West Virginia which are subject to the Royalty Agreements.

18.     Antero is a lessee or overriding royalty payor, whether by succession or as the original party, under the Royalty Agreements, and has produced Natural Gas from wells subject to the Royalty Agreements, and paid royalties to the Plaintiffs and the members of the Class.

19.     Each of the Plaintiffs is a lessor under lease agreements (Exhibits 1 and 2) under which Antero has acquired the interests of the lessee, and has paid royalties to each of the Plaintiffs at certain times after January 1, 2007.

20.     On March 14, 1984, Jesse J. Nixon, Betty Nixon, Mary Alice Vincent, and Hubert L. Vincent, as Lessors, entered into a Lease Agreement with Clarence W. Mutschelknaus, as Lessee ("the 1984 Lease Agreement") (Ex. 1).  On June 26, 1993, Lessor Jesse J. Nixon died and his interest in the 1984 Lease Agreement passed through the Last Will and Testament of Jesse J. Nixon to Lessor Betty Nixon. On July 2, 1993, Lessor Betty Nixon died and Plaintiff Jacklin Romeo received 1/4th of Lessor Betty Nixon's interests under the 1984 Lease Agreement through the Last Will and Testament of Betty Nixon. Plaintiff Jacklin Romeo has held her respective interest under the 1984 Lease Agreement received from the date that she acquired such an interest July 2, 1993 to the present day. Plaintiff Jacklin Romeo signed a modification of

5

the 1984 Lease Agreement with Antero, recorded on October 22, 2012 in Book 270, Page 570, which is attached hereto as part of Exhibit 1. The modification of the 1984 Lease Agreement grants certain pooling rights directly to Antero.21.   Antero acquired the rights and obligations of the Lessee under the 1984 Lease Agreement in the following title chain (as recorded in the County Clerk's Office of Doddridge County, West Virginia):

    a.  On May 21, 1984, lessee Clarence W. Mutschelknaus assigned the 1984 Lease Agreement to Stonewall Gas Company, as recorded in Book 136, Page 564.

    b.  Lessee Stonewall Gas Company assigned the 1984 Lease Agreement to Mountain Gas 84-3, as recorded on December 10, 1985 in Book 145, Page 76.

    c.  Lessee Mountain Gas 84-3 assigned the 1984 Lease Agreement to Dominion Reserves, Inc., as recorded on December 23, 1993 in Book 170, Page 19.

    d.  Dominion Reserves, Inc. changed its name to CNX Gas Company in 2011, as recorded in Book 292, Page 469. On information and belief, CNX Gas Company assigned its interest in the 1984 Lease Agreement to Antero prior to January 1, 2009.

21.    The royalty provision of the 1984 Lease Agreement states:

> In consideration of the premises, the said [Lessee] covenants and agrees: First, to deliver monthly to the credit of the Lessors, their heirs or assigns, free of costs, in the pipeline, to which Lessee may connect its wells, Lessors' proportionate share of the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and second, to pay monthly Lessor's proportionate share of the one-eighth (1/8) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8) of the net value at the factory of the gasoline and other gasoline products manufactured from casinghead gas.

22.    On October 19, 1979, Lee H. Snyder and Olive W. Snyder, as Lessors, entered into an Oil and Gas Lease with Robert L. Matthey, Jr., as Lessee ("the 1979 Lease Agreement")

(Ex. 2).  Lessor Olive W. Snyder died on December 12, 1979 and her interests under the 1979 Lease Agreement transferred to Lee H. Snyder at that time. Upon the death of Lee H. Snyder on or about November 22, 1983, 1/7th of the Lessors' interest under the 1979 Lease Agreement transferred under the Last Will and Testament of Lee H. Snyder to Lee H. Snyder's sibling, Martha B. Snyder. Upon the death of Martha B. Snyder on or about September 6, 1994, Martha B. Snyder's 1/7th interest under the 1979 Lease Agreement was transferred under the Last Will and Testament of Martha B. Snyder in equal shares to Martha B. Snyder's three children: William J. Snyder, Susan S. Rine, and Debra Snyder Miller. Plaintiffs Susan S. Rine and Debra Snyder Miller have subsequently held their respective interests under the 1979 Lease Agreement received on or about September 6, 1994.  Both Plaintiff Susan S. Rine and Plaintiff Debra Snyder Miller signed modifications of the 1979 Lease Agreement with Antero, as evidenced in the modifications executed on July 24, 2013, in Book 1517, Page 189 and in Book 1516, Page 717, which are attached hereto Exhibit 2. The modifications of the 1979 Lease Agreement grants certain pooling rights directly to Antero.

23.     Antero acquired the rights and obligations of the Lessee under the 1979 Lease Agreement in the following title chain (as recorded in the County Clerk's Office of Harrison County, West Virginia unless otherwise specified):

    a.  On July 28, 1980, lessee Robert L. Matthey assigned the 1979 Lease Agreement to James F. Scott, as recorded in Book 1094, Page 45

    b.  Lessee James F. Scott assigned the 1979 Lease Agreement to Convest 1980-II Energy Income Program, as recorded in Book 1106, Page 278.

    c.  Convest 1980-II Energy Income Program assigned the 1979 Lease Agreement to Convest Production Company, as recorded in Book 1151, Page 862.

d. Convest Production Company merged into CEP Interim Partners, L.P., and CEP Interim Partners, L.P. merged into Convest Energy Corporation, as reflected in the certificates issued by the Office of the Secretary of State for the State of Texas and recorded on October 7, 1991 in the Office of the Clerk of the Harrison County Commission in Articles of Incorporation as recorded in Book 52, Page 56, and Book 54, Page 59.

e. Convest Energy Corporation assigned the 1979 Lease Agreement to Fuel Resources Production and Development Company, October 1, 1993, as recorded in in Book 1244, Page 623.

f. Fuel Resources Production and Development Company merged into The Houston Exploration Company, Inc., on February 28, 1996 recorded on October 11, 2000, as recorded in in Book 1324, Page 735.

g. The Houston Exploration Company, Inc. assigned the 1979 Lease Agreement to Keyspan Natural Fuel, LLC, recorded on July 11, 1997 in Book 1289, Page 821.

h. Keyspan Natural Fuel, LLC assigned the 1979 Lease Agreement to the Houston Exploration Company, Inc. recorded on June 11, 2003 in Book 1351, Page 1260.

i. The Houston Exploration Company, Inc. assigned the 1979 Lease Agreement to Seneca-Upshur Petroleum, Inc., recorded on September 9, 2004 in Book 1367, Page 1084.

j. Seneca-Upshur Petroleum, Inc. converted into Seneca-Upsher Petroleum, LLC, as reflected in a certificate of conversion from the Secretary of State for the State of West Virginia as recorded on April 25, 2011 in the Office of the Harrison Clerk of the County Commission in Articles of Incorporation Book 59, Page 1032.

k. Seneca-Upsher Petroleum, LLC assigned the 1979 Lease Agreement to Antero, recorded on July 17, 2012 in Book 1495, Page 380.

24. The royalty provision of the 1979 Lease Agreement states:

(a) Lessee covenants and agrees to deliver to the credit of the Lessor, his heirs or assigns, free of cost, in the pipe line to which

8

said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.

(b)      Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eight (1/8) of the gross proceeds received from the sale of the same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly.

25.      Under both the 1984 Lease Agreement and the 1979 Lease Agreement, Antero, as the Lessee, impliedly covenants that it will market the gas produced from the wells subject to those Lease Agreements. Antero's implied duty to market includes the responsibility to place the gas into a marketable condition, and to transport the marketable gas products to the market. Pursuant to Antero's duty to market, Antero is obligated to pay the Plaintiffs, as Lessors, royalties based upon their share of 1/8th of the proceeds received from the purchasers of the marketable gas products at the point of sale, without deductions. *Estate of Tawney v. Columbia Natural Resources, LLC*, 633 S.E.2d 22, 27-30 (W. Va. 2006); *Wellman v. Energy Resources, Inc.*, 557 S.E.2d 254, 265 (W. Va. 2001).

26.      There is no language in the 1984 Lease Agreement or the 1979 Lease Agreement which provides that Antero, in its calculation and payment of royalties to the Plaintiffs, is permitted to deduct any of the costs incurred between the wellhead and the point of sale of the marketable gas products, and therefore Antero is not permitted to deduct any such costs in its calculation of royalties paid to Plaintiffs. *Tawney*, 633 S.E.2d at 30.

27.      The gas produced by Antero from the wells subject to the 1984 and 1979 Lease Agreements is "wet gas", meaning that it is saturated with liquid hydrocarbons and water. The gas produced by Antero from the wells subject to these two Lease Agreements must be treated and processed to separate residue gas from hydrocarbon liquids and contaminants, such as

carbon dioxide, in order to obtain marketable residue gas, which is then sold to third party purchasers.

28.     The wet gas produced by Antero from the wells subject to the 1984 and 1979 Lease Agreements contains valuable liquid hydrocarbon components.  In order to transform those liquid hydrocarbons into marketable natural gas liquid products, the liquid hydrocarbons must be extracted from the raw gas stream at a processing plant, and thereafter fractionated into marketable natural gas liquid products at a fractionation facility, so that marketable ethane, butane, isobutane, propane and natural gasoline ("the marketable natural gas liquid products") can be sold to third party purchasers.

29.     In its production and sale of natural gas and marketable natural gas liquid products which were produced from the wells subject to the 1984 and the 1979 Lease Agreements, Antero, or those acting on its behalf, consistently: (1) produced raw gas from the Class members' wells which contained both natural gas and valuable liquid hydrocarbons; (2) transported the raw gas produced from the wells at issue to a processing plant, where the valuable natural gas liquids were extracted from the raw gas which came from the Class members' wells, into a Y Grade mix of natural gas liquids; (3) conditioned and treated the gas so that the remaining "residue gas" conformed to the quality specifications of the long distance transmission pipeline into which the residue gas was delivered and sold to third party purchasers; and (4) transported the Y Grade mix of extracted natural gas liquids to a fractionation facility so that the Y Grade mix could be fractionated into marketable natural gas liquid products—ethane, butane, isobutane, propane, and natural gasoline—and thereafter sold to third party purchasers by Antero, or other entities to whom Antero had delegated the duty to convert the raw gas into marketable natural gas liquids and to sell such marketable natural gas liquids to third party purchasers at the point of sale.

30.     In its calculation and payment of royalties paid to Plaintiffs, Antero has consistently underpaid the royalties owed to Plaintiffs, by: (1) failing to pay royalties based upon the sales price received on the sale of residue gas which was obtained from wells subject to the 1984 and 1979 Lease Agreements, at the point of sale; (2) failing to pay royalties based upon the sales price received at the point of sale on the sale of marketable natural gas liquid products which were obtained from the wells subject to the 1984 and 1979 Lease Agreements; and (3) improperly deducting from the sale prices received on the sale of marketable residue gas and the five marketable natural gas liquid products various post-production costs and expenses, including expenses for treating, compression, fuel, gathering, transportation to the point of sale, processing, fractionation, and other expenses incurred in transforming the raw gas produced from the wells into marketable natural gas products.

31.     Under each of the Royalty Agreements described in the Class definition, Antero has the same implied duty to market the gas, and the same royalty payment obligations to the royalty payees, as it does to the Plaintiffs under the 1984 and 1979 Lease Agreements, as set forth in Paragraph 25 of this Second Amended Class Complaint.

32.     There is no language in the Royalty Agreements described in the Class definition which provides that Antero, in its calculation and payment of royalties to the Class members, is permitted to deduct any of the costs incurred between the wellhead and the point of sale of the marketable gas products, and therefore Antero is not permitted to deduct any such costs in its calculation of royalties paid to the Class members. *Tawney*, 633 S.E.2d at 30.

33.     The gas produced by Antero from the wells subject to the Royalty Agreements described in the Class definition is the same type of "wet gas" described in Paragraphs 27 and 28 of this Amended Class Complaint.

11

34.     In its production and sale of natural gas products which came from the wells subject to the Royalty Agreements described in the Class definition, Antero, or those acting on its behalf, consistently: (1) produced natural gas from the Class members' wells which contained both natural gas and valuable liquid hydrocarbons; (2) transported the gas produced from the wells at issue to a processing plant where the valuable natural gas liquids were extracted from the gas which came from the Class members' wells, into a Y Grade mix of natural gas liquids; (3) conditioned and treated the gas so that the remaining "residue gas" conformed to the quality specification of the long distance transmission pipeline into which the residue gas was delivered and sold; and (4) transported the "Y Grade" mix of extracted natural gas liquids to a fractionation facility so that the Y Grade mix could be fractionated into marketable natural gas liquids—ethane, butane, isobutane, propane, and natural gasoline—and thereafter sold to third party purchasers by Antero, or other entities to whom Antero had delegated the duty to convert the raw gas into marketable natural gas liquid products and to sell such marketable natural gas liquid products to third party purchasers.

35.     In its calculation and payment of royalties paid to the members of the defined Class who are payees under the Royalty Agreements described in the Class definition, Antero has consistently underpaid the royalties owed to such Class members by: (1) failing to pay royalties based upon the sales prices received on the sale of residue gas which was obtained from wells subject to the Royalty Agreements, at the point of sale; (2) failing to pay royalties based upon the sales price received at the point of sale on the sale of marketable natural gas liquid products which were obtained from the wells subject to the Royalty Agreements at the point of sale; and (3) improperly deducting from the sale prices received on the sale of marketable residue gas and the five marketable natural gas liquid products various post-production costs and expenses, including expenses for treating, compression, fuel, gathering, transportation to the

point of sale, processing, fractionation, and other expenses incurred in transforming the raw gas produced from the Class members' wells into marketable natural gas products.

36.    By underpaying the royalties owed to Plaintiffs and the Class in the manner described above, Antero has breached its contractual obligations to Plaintiffs and the Class under the Royalty Agreements.

37.    As a result of Antero's breaches of its royalty payment obligations under the Royalty Agreements, Plaintiffs and the Class have sustained substantial damages.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

38.    The allegations contained in Paragraphs 1 through 37 inclusive, are restated and incorporated by reference herein.

39.    At all times relevant hereto, Plaintiffs and the Class were royalty payees under valid and enforceable Royalty Agreements under which Antero has been obligated to pay royalties, and has paid royalties, at various times after June 1, 2007.

40.    At all times relevant hereto, Plaintiffs and the Class have fully performed their contractual obligations under the terms of the Royalty Agreements with Antero.

41.    Antero has breached its contractual obligations to Plaintiffs and the Class under the Royalty Agreements, in the manner described above.

42.    Plaintiffs and the Class have sustained substantial damages as a direct result of Antero's breaches of its contractual obligations to Plaintiffs and the Class under the Royalty Agreements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

13

A.      An Order certifying this case as a Fed. R. Civ. P. 23(b)(3) class action, appointing

each of the Plaintiffs  as the Class Representatives, and appointing Plaintiffs' attorneys as Class

Counsel for the Plaintiff Class;

B.      A judgment in favor of the Plaintiffs and the Class against Antero for the damages

sustained as a result of Antero's breaches of the Royalty Agreements, inclusive of an award of

prejudgment interest on all royalty underpayments, pursuant to the applicable West Virginia law,

such prejudgment interest to be calculated from the date of each royalty underpayment to the

date of judgment;

C.      An award of court costs; and

D.      Such further relief as the Court deems just.

## JURY DEMAND

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED:   October 2, 2017              */s/ L. Lee Javins*
                                      L. Lee Javins II, Wv. Bar No. 6613
                                      Taylor M. Norman, Wv. Bar No. 13026
                                      Bailey, Javins & Carter, LC
                                      213 Hale Street
                                      Charleston, WV 25301
                                      (304) 345-0346
                                      Fax: (304) 345-0375
                                      Email: ljavins@bjc4u.com
                                              tnorman@bjc4u.com

                                      Howard M. Persinger, III, Wv. Bar No. 6943
                                      Persinger & Persinger, L.C.
                                      237 Capitol Street
                                      Charleston, WV 25301
                                      (304) 346-9333
                                      Fax: (304) 346-9337
                                      Email: hmp3@persingerlaw.com

                                      and

                                      George A. Barton, Mo. Bar No. 26249
                                      Robert R. Titus, Mo. Bar No. 69588

14

Law Offices of George A. Barton, P. C.
7227 Metcalf Ave. Suite 301
Overland Park, KS 66204
(816) 300-6250
Fax: (816) 300-6259
Email: gab@georgebartonlaw.com
       robert@georgebartonlaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

135 PAGE 628

THIS AGREEMENT, made and entered into the ____14th____ day of ____March____ 19 84 , by and between __Jessie J. Nixon and Betty Nixon, his wife_____
__Mary Alice Vincent and Hubert L. Vincent, her husband_____

part ___ies___ of the first part, hereinafter called Lessors, whether one or more, and __Clarence W. Mutschelknaus_____ _____ party of the second part, hereinafter called Lessee;

WITNESSETH, that the said Lessors, for and in consideration of the sum of ____one____ ( ____1.00____ ) Dollars ($ __1.00__ ) to them in hand well and truly paid by said Lessee, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the said Lessee, to be paid, kept and performed, have granted, demised, leased and let and by these presents do grant, demise, lease and let, with covenants of quiet possession, and that they have the sole right so to grant and demise, unto the said Lessee, its successors and assigns, for the purpose of mining and operating for oil, gas and casinghead gas, and of building tanks, stations, power plants, water stations and structures thereon to take care of the said products, and of laying pipelines on, over and across the leased premises and other lands of Lessors, for the purpose of conveying oil, gas, casinghead gas, steam or water therein from and to wells and pipe lines on the premises and on adjoining and adjacent farms, and rights of way for road ways over this and other land of Lessors, _____, all that certain tract of land situate in _____Greenbrier_____ District of ____Doddridge_____ County and State of ____West Virginia_____ , on the waters of _____Greenbrier Creek_____ bounded as follows:

On the North by lands of _____
On the East by lands of __R.G. Davis_____
On the South by lands of __Marcellus Clark_____
On the West by lands of __M.T. Williams_____

containing __fifty one    51__ acres, more or less, being land purchased from _____ by deed into _____, and recorded in Deed Book No._____ , at page_____ , reserving, however, therefrom all lands within two hundred (200) feet of the resident buildings now on the premises on which no well shall be drilled by either party except by mutual consent.

It is agreed that this lease shall remain in force for the term of ____one____ ( ____1____ ) years from this date and as long thereafter as operations for oil and gas purposes are being conducted on the premises, or oil or gas is found in paying quantities thereon by the said Lessee, its successors and assigns. "Operations" as used herein shall be deemed to be commenced when the first material or equipment is placed on the leased premises or when the first work, other than surveying or staking the location, is done thereon which is necessary for such operations.

In consideration of the premises, the said party of the second part covenants and agrees: First, to deliver monthly to the credit of the Lessors, their heirs or assigns, free of cost, in the pipeline to which Lessee may connect its wells, Lessors' proportionate share of the equal one-eighth (1/8th) part of all oil produced and saved from the leased premises; and second, to pay monthly Lessors' proportionate share of the one-eighth (1/8th) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8th) of the net value at the factory of the gasoline and other gasoline products manufactured from casinghead gas.

The Lessee shall not be required in any event to increase the rate of said gas well or casinghead gas payments or said royalty of oil by reason of any royalty or interest in said oil or gas that may have been heretofore sold, reserved or conveyed by Lessors or their predecessors in title or otherwise. And any such outstanding royalty or interest shall first be deducted from the royalties and rentals above provided to be paid or delivered.

If (and only if) Lessors or any third party claiming under Lessors are entitled to receive free gas, whether by virtue of the ownership of the surface of the leased premises and all the oil and gas underlying the same, or of the surface of the leased premises and an undivided interest in the oil and gas underlying the same; or of the surface of the leased premises and the express record right to receive free gas, then Lessors or such third party may lay a line to any well producing gas only on said land, and take gas produced from said well for _____ own use on said land at their own risk, subject to the use, operation, pumping and right of abandonment of the well by the Lessee; the first two hundred thousand (200,000) cubic feet of gas so taken in each year shall be free, but all gas in excess of two hundred thousand (200,000) cubic feet, taken in each year shall be paid for by the Lessors or such third party at the same rate at which Lessee sells the remaining gas from said well to other third parties, which rate may vary from time to time, and measurement and regulation shall be by meter and regulators set at the tap on the well. This privilege is upon condition that the Lessors or such third party shall use said gas with economy, in safe and proper pipes and appliances, and shall subscribe to and be bound by reasonable rules and regulations of the Lessee at such time relating to such use of gas.

Lessee covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portion on the farm. And it is agreed that the leased premises may be fully and freely used by the Lessors for farming purposes, excepting such parts as are used by the Lessee in operating hereunder, and further, that the said Lessee may drill or not drill on said land, as it may elect, and that the consideration and rentals paid and to be paid constitute adequate compensation for such privilege. It is agreed that the Lessee is to have the privilege of using, free, sufficient water and gas from the leased premises to run all machinery necessary for drilling and operating thereon at any time and to remove all machinery and fixtures on the leased premises. Lessee shall pay for damages caused by its operations to growing crops on said lands, and when requested by Lessor, shall bury its pipelines below plow depth.

The said Lessee covenants and agrees to pay rental at the rate of __their proportionate share of $4.00 per acre__ __per annum__ ) Dollars annually in advance, beginning __when last signature is secured__ on this date, until, but not after, a well yielding royalty to the Lessors is drilled on the leased premises, and all rentals shall cease after the surrender of this lease as hereinafter provided for. During any period (whether before or after expiration of the primary term hereof) where there is an oil or gas well on the leased premises capable of producing oil or gas in paying quantities and oil or gas is not being sold or used and the well or wells are shut-in and there is no current production of oil or gas or operations on the leased premises or any portion thereof sufficient to keep this lease in force, Lessee shall be obligated to pay or render as shut-in royalty an amount (which shall be the same and shall be paid regardless of the number of shut-in wells) for each three (3) month period equal to one-quarter (1/4) of the annual delay rental as hereinabove provided, and it will be considered that oil or gas is produced for all purposes during any period that such well or wells are so shut-in. Said shut-in royalty for the first three (3) month period shall be payable within forty-five (45) days following shutting-in of all wells, and paying for each subsequent three (3) month period shall be payable on or before the beginning date of each subsequent three (3) month period. Lessee shall use reasonable diligence to market oil or gas capable of being produced from such shut-in well or wells but shall be under no obligation to market such gas under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory.

If Lessors own a less interest in the above-described land than the undivided fee simple estate thereon, then the royalties and rentals herein provided shall be paid to Lessors only in the proportion which their interest bears to the whole and undivided fee.

Lessee ~~covenants and agrees to drill a test well in order to fully develop the land for the discovery of oil and gas~~ ...

135 PAGE 629

All payments for shut-in wells, delay, for gas produced and marketed, for gasoline and other by-products may be made directly to the Lessors, their heirs or assigns by check mailed to _____ Jessie J. Nixon and Mary Alice Vincent _____

nt _____ P.O. _____

State of _____

such payments may be also made in the same manner to _____

who is hereby appointed agent for the Lessors to receive the same. _____

_____

_____

In case of notice of, or an adverse calim to the leased premises affecting all or any part of the shut-in rentals, delay rentals, or royalties, Lessee may withhold payment or delivery of the same until the ownership is determined by compromise, or by final decree in a court of competent jurisdiction, and to this end Lessee may file a petition for interpleader.

The interest or estate of either party hereto may be assigned, the privilege of assigning in whole or in part being expressly allowed. In the event this lease shall be assigned as to any part or parts of the above-described land and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease as it covers a part or parts of said lease upon which the said Lessee or any assignee thereof shall make due payment of said rental. No change of ownership in the land or in the rentals or royalties shall be binding on the Lessee until after notice to the Lessee and after it has been furnished with a written transfer or assignment or a certified copy thereof.

Lessors hereby warrant and agree to defend the title to the land herein described and agree that the Lessee at its option may pay, discharge or redeem any taxes, mortgages or other liens existing, levied or assessed on or against the above-described land, and in the event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty or rentals occurring hereunder to the discharge of any such taxes, mortgages or other liens.

It is expressly agreed that if the Lessee shall commence drilling operations at any time while this lease is in force, it shall remain in force and its terms continue as long as such operations are prosecuted and if production results therefrom, then as long as production continues. If after the expiration of the term of this lease production from the leased premises shall cease from any cause, this lease shall not terminate provided Lessee resumes operations within ninety (90) days from such cessation, and this lease shall remain in force during the prosecution of such operations, and if production results therefrom, then as long as oil or gas is produced in paying quantities.

Upon the payment of One Dollar ($1.00) at any time by the party of the second part, or by its successors and assigns, it or they shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, and this lease becomes absolutely null and void.

Lessors agree that the recordation of a deed of surrender in the proper county, and the mailing in the post office of a check, payable as above provided, for said last-mentioned sum and all amounts then due hereunder, shall be a full surrender and termination of this lease.

All provisions of this lease shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties of this agreement have hereunto set their hands and seals the day and year first above written.

Witness:

Prepared by Ronald L. Swann

X _Jesse J. Nixon_____ (SEAL)

X _Betty O. Nixon_____ (SEAL)

X _Mary A. Vincent_____ (SEAL)

X _Hubert L. Vincent_____ (SEAL)

_____ (SEAL)

STATE OF __West Virginia__, COUNTY OF __Harrison__, TO-WIT:

This foregoing instrument was acknowledged before me this _16_ day of _March_, 19_84_, by

_Jessie J. Nixon and Betty Nixon, his wife_

My commission expires: _5/20/90_

_____ Notary Public

STATE OF __West Virginia__, COUNTY OF __Harrison__, TO-WIT:

This foregoing instrument was acknowledged before me this _16_ day of _March_, 19_84_, by

_Mary Alice Vincent and Hubert Vincent, her husband_

My commission expires: _5/20/90_

_____ Notary Public

STATE OF WEST VIRGINIA,

DODDRIDGE COUNTY COMMISSION CLERK'S OFFICE, _Mar. 26_ 19_84_ _12:25_ M.

The foregoing ___Lease___ together with the certificate thereto annexed. was this day admitted to record in my said office.

DESSIE P. DAUGHERTY, Clerk

By _Rosemary Helmick_ Deputy.

STATE OF **WEST VIRGINIA**
COUNTY OF **DODDRIDGE**

I, Beth A Rogers Clerk of the Doddridge County Commission, do hereby certify that the foregoing writing is a true and accurate copy as appears of record in my office in **LEASE,** *Book: 135* at *Page: 628,* of said record.

The foregoing instrument was acknowledged before me **Wednesday, September 6, 2017.**

COUNTY SEAL

*Beth A. Rogers*

Beth A Rogers
Clerk of the Doddridge County Commission

By   *Lorena C Slater*

Lorena C. Slater
Deputy Clerk

BOOK 279 PAGE 570

STATE OF WEST VIRGINIA)                    )
                                                          )
COUNTY OF DODDRIDGE   )                    )
                                                          )
                                                          )
                                                          )

------Above This Line Reserved For Official Use Only-----

Lease No. :

### Modification of Oil and Gas Lease

LESSOR:       Jacklin Romeo

LESSEE:       Antero Resources Appalachian Corporation

DATED:        September 19, 2012

WHEREAS, MADE AND ENTERED INTO this 19th day of September, 2012, by Jacklin Romeo, party of the first part, hereinafter referred to as "Lessor", and Antero Resources Appalachian Corporation, party of the second part, hereinafter referred to as "Lessee" WITNESSETH THAT:

WHEREAS, heretofore, on the 14th day of March, 1984, Jessie J. Nixon, Betty Nixon, Mary Alice Vincent, Herbert L. Vincent, as LESSOR, executed and delivered to Clarence W. Mutschelknaus, as Lessee, a certain Oil and Gas Lease, covering the following described land situate in Greenbrier District, Doddridge County, State of West Virginia,
to-wit:

> Fifty One (51) acres, more or less on the waters of Greenbrier Run, in Greenbrier District, County of Doddridge, State of West Virginia, bounded substantially by lands now or formerly owned as follows:
>
> *On the North by lands of Chas W Smith*
> *On the East by lands of R C Davis*
> *On the South by lands of Marcellus Clark*
> *On the West by lands of M T Williams*

WHEREAS, said Oil and Gas Lease is recorded in Lease Book 135, of Deed Records of said County, on Page 628.

WHEREAS, said lease did not contain pooling or unitization authority; and

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00), the mutual covenants and conditions herein contained, and other good and valuable considerations, the receipt of all of which are hereby acknowledged, the parties, for themselves, their successors and assigns, covenant and agree as follows:

1.  It is the desire of the parties hereto to amend and modify the said lease to include pooling provisions as set out below;

    POOLING     Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates therein in the vicinity of said land, whether contiguous or noncontiguous, held by Lessee or other Lessees, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not exceed 80 acres for oil and 640 acres for gas; provided, however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. Lessee, alone or with other lessees, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer of title to any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of an producing well on the pooled are, shall be considered for all purposes (except as to royalties and the use of free gas) as if said well were located on, or such drilling operations were conducted upon, the lands covered by

this lease whether or not such well is located upon or such drilling operations are conducted upon, said lands. The royalties provided for in the lease shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the Pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool.

As to any part of the leasehold premises not included within a pooled area(s), Lessee shall continue to pay to Lessor the rent specified in the lease, in the proportion that such unpooled acreage bears to the total acreage subject to this lease from time to time. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and cancelled of record. Such cancellation or surrender shall not effect a surrender or cancellation of this lease.

AND, for the same consideration recited above, I, or we, the undersigned, jointly and severally, do hereby adopt, ratify, and confirm The Lease, and all of its provisions, except as herein modified and amended, and do hereby grant, lease, and let, to the Lessee therein or its successors and assigns, any and all interest which I, or we, now have, or may hereafter acquire, either by conveyance, devise, inheritance, or operation of law, and whether, vested, expectant, contingent or future, in and to the lands described therein; in accordance with each and all of the provisions contained in The Lease and as amended hereby, and the undersigned hereby declare that The Lease and all of its provisions are binding on the undersigned and is a valid and subsisting Oil, Gas, and Mineral Lease and this agreement shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned.

Signed:

_Jacklin Romeo_

**Jacklin Romeo**

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF West Virginia

COUNTY OF Harrison

To-Wit: I, ~~Jacklin R.~~ Stephen J Noel, do hereby certify that Jacklin Romeo, whose name is signed to the writing above, bearing date of the 21ᵗʰ day of September, 2012 has this day acknowledged the same before me in my said county.

Given under my hand this 21st day of September 2012.

My Commission Expires Nov 27, 2016

_Public Notary_

NOTARY PUBLIC OFFICIAL SEAL
STEPHEN J. NOEL
State of West Virginia
My Commission Expires November 27, 2016
507 Park Street
Bridgeport, WV 26330

Prospect: Greenbrier
DTO#:
Requirement #:

This instrument was prepared by:
Antero Resources Appalachian Corporation
PO Box 410
Bridgeport, WV 26330

Beth A Rogers
DODDRIDGE County 03:16:36 PM
Instrument No 167870
Date Recorded 10/22/2012
Document Type MOD/L
Pages Recorded 2
Book-Page  279-570
Recording Fee $5.00
Additional  $6.00

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

STATE OF **WEST VIRGINIA**
COUNTY OF **DODDRIDGE**

I, Beth A Rogers Clerk of the Doddridge County Commission, do hereby certify that the foregoing writing is a true and accurate copy as appears of record in my office in LEASE, *Book: 279* at *Page: 570,* of said record.

The foregoing instrument was acknowledged before me Wednesday, September 6, 2017.

COUNTY SEAL

Beth A Rogers
Clerk of the Doddridge County Commission

By

Lorena C. Slater
Deputy Clerk

*See Deed Bk 1289 pg 821*
*See D/B 1181 pg 1008*

1094   59

Received for Recording _____   Lease # _____

Recorded _____   Map Ref. _____

Book _____ Pg _____   Renewal # _____

Expires _____

## OIL and GAS LEASE

THIS AGREEMENT made and entered into this the ___19___ day of ___October___

19___79___, by and between ___Lee M. Snyder and Oliva M. Snyder, his wife___

hereinafter called Lessor (whether one or more), and ___Robert L. Matthey, Jr.___
hereinafter called Lessee,   Route 1, Box 73, Wolf Summit, WV   26452

WITNESSETH, that said Lessor, in consideration of the sum of ONE DOLLAR ($1.00), the receipt of which is hereby acknowledged, and of the covenants hereinafter contained on the part of said Lessee, to be paid, kept and performed, has granted, demised, leased and let, exclusively unto Lessee, with covenants of general warranty, for the purpose and with the rights of drilling, producing, and otherwise operating for oil and gas, and of laying pipe lines and building tanks, roads, stations, and electric power lines, houses for valves, meters, regulators and other appliances, with all other rights and privileges necessary, incident to or convenient for the operation of this land alone and conjointly with neighboring lands, all that certain tract of land situate in the ___District of Union (Turtle Tree Fork)___, County of ___Harrison___,

State of ___West Virginia___, and bounded substantially as follows:

On the North by lands of ___Cora Howell___

On the East by lands of ___Nathan Matheny___

On the South by lands of ___Henry Moore___

On the West by lands of ___Alvin Lawson___

and containing, for the purpose of calculating rentals, ___1/48 Int. in 107___ acres of land whether actually

containing more or less, and part of all of said land is described in that certain deed to Lessor from _____

recorded in Book _____   dated _____, in the Recorder's Office of said County, it being the intent of Lessor to include all lands owned by the Lessor in said County.

1.   It is agreed that this lease shall remain in force for a primary term of ___three(3)___ years from the date hereof and as long thereafter as the said land is operated by Lessee in the production of oil or gas.

2.   (a)   Lessee covenants and agrees to deliver to the credit of Lessor, his heirs or assigns, free of costs, in the pipe line to which said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.

(b)   Lessee covenants and agrees to pay Lessor as a royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly.

3.   If Lessee shall not have either begun operations for the commencement of a well on the premises within

_____ from the date hereof Lessee agrees to pay to the Lessor the sum of ___$2.00 per acre X 1/48 Int.___

in 107 acres $4.46   DOLLARS (p. 4.46 ) annually, commencing ___3.00 days___

from date as a rental for ___12___ months such commencement be delayed, subject however to the right of cancellation hereinafter granted to Lessee, and it is understood and agreed that the rental as hereinbefore provided for is the chief consideration until commencement of a well. The commencement of a well shall, however, be and operate as a full liquidation of all rentals thereafter accruing under this provision of this lease during the remainder of the term hereof. In the event of completion of a commercially unproductive well on the Premises the Lessee shall be under no obligation to make delay rental payments for a period of one year following the completion of such well. At the expiration of this rental free period, Lessee may continue to hold this lease for each further term as it may desire, not to exceed the primary term thereof, upon the payment of the rentals above mentioned, Lessee may, at its option, pay rentals quarterly or annually.

4.   All payments under this lease shall be made by check or voucher to the order of

___Mr. and Mrs. Lee M. Snyder___, mailed to Route: 2, Box 5099, Newport Richey, Florida

___33552___   until the Lessee shall have written notice from the Lessor, its heirs or assigns, accompanied by original or certified copies of deeds or other documents as Lessor may require evidencing such change of ownership directing payments to be made otherwise, and any payments made as above until such direction, and thereafter in accordance with such direction shall absolve the Lessee from any liability to any heir or assign of the Lessor. All payments of royalty are to be made in accordance to Lessor's respective interests therein, as hereinafter set forth, and this lease shall not be forfeited for Lessor's failure to pay any rentals or royalties until Lessee has received, written notice by registered mail of such default and shall fail, for a period of thirty (30) days after receipt of such notice to pay same.

PLAINTIFF'S
EXHIBIT

2

1094   60

5.   Lessor excepts and reserves a total amount of 200,000 cubic feet of gas annually or such part thereof as Lessee may use each year from the gas that Lessee may hereafter produce or otherwise have available from one gas producing well completed and operated upon the leased premises, which said amount of 200,000 cubic feet of gas per year Lessor shall be entitled to receive free of cost for heat and light in one dwelling house on the leased premises when and so long as Lessee may elect to produce or operate a well for the aforesaid purpose upon the leased premises, by Lessor laying the necessary lines and making connections at Lessee's cost at such point on the flowhead premises as may be designated by the Lessee, provided said gas is used with economical appliances and be measured by meter furnished by Lessee. The regulation of such gas will be by regulations furnished by Lessee, and approved by Lessee, placed as a point designated by Lessee, with said gas to be used at Lessee's own risk and Lessee not to be in any way liable for any interruption or insufficient supply of such gas for said domestic use caused by pumping stations, breakage of lines or otherwise, and anything herein shall prevent the Lessee from abandoning any well or wells or pipelines on the leased premises and removing the pipe therefrom at any time. If more than 200,000 cubic feet per year is used, the excess shall be paid for at the rate charged to domestic consumers in the same area, and in case of default in payment for gas used in excess of said 200,000 cubic feet, Lessee is hereby authorized to deduct the amount thereof from any royalty or other payments that are then due, or may later become due, under the terms of this lease.

6.   In addition to the covenants of general warranty hereinabove contained, Lessor further covenants and agrees, that if Lessor's title to the leased premises shall come into dispute or litigation, or if, in the judgment of Lessee, there are bona fide adverse claims to the rentals or royalties hereinabove provided for, then Lessee, at its option, may withhold the payment of said rentals or royalties until final adjudication or other settlement of such dispute, litigation, claim or claims and that Lessee, at its option, may pay and discharge any taxes, mortgages or other lien or liens, existing, levied, assessed or which may hereafter come into existence or be levied or assessed on or against the leased premises, and, in the event it exercises such option, Lessee shall be subrogated to the lien and any and all rights of any holder or holders thereof, and may reimburse itself by applying to the discharge of any such mortgage, tax, or other lien or liens, any rental or royalty accruing hereunder.

7.   If an when drilling or other operations hereunder are delayed or interrupted by lack of water, labor or material, or by fire, storm, flood, war, rebellion, insurrection, riot, strike, differences with workmen, or failure of carriers to transport or furnish facilities for transportation, or as a result of some order, rule, regulation, requisition or necessity of the government, or as the result of any other cause whatsoever beyond the control of Lessee, the time of such delay or interruption shall not be counted against Lessee, anything in this lease to the contrary notwithstanding. All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages for failure to comply therewith, if compliance is prevented by, or if such failure is the result of any such Law, Order, Rule or Regulation.

8.   Lessee shall have the right at any time during the term of this lease or after the expiration or termination thereof to remove all machinery, fixtures, pipe lines, houses, buildings, and other structures placed on said premises, including the right to pull and remove all casing and tubing.

9.   If the Lessee shall begin operations for the commencement of a well during the term of this lease or any extension thereof, the Lessee shall then have the right to complete the drilling of such well, and if oil or gas or either of them be found in paying quantities, this lease shall continue and be in force and with like effect as if such well had been completed within the term first herein mentioned.

10.   Lessee shall have the right to assign this lease or any interest and the assignee of Lessee shall have corresponding rights, privileges, and obligations with respect to said royalties and rentals as to the acreage assigned to it.

11.   Lessee shall upon completion of the first productive well upon said premises make a diligent effort to obtain a pipeline connection but any delay shall not be counted against the Lessee provided Lessee shall resume delay rental payments for quarterly periods, beginning one year from the date that the first productive well shall be completed until said first well shall be connected to a pipeline.

12.   Lessee may, at any time during the term hereof, cancel and surrender this lease, and be relieved of any and all obligations, payments and liabilities thereafter to accrue as to the leased premises, by the mailing of a notice of such surrender, and a check covering all rentals, if any, due up to the date of such cancellation or surrender.

13.   It is agreed that said Lessee may drill or not drill on said land as it may elect, and the consideration and rentals paid and to be paid hereunder constitute adequate compensation for such privilege.

14.   It is agreed that said Lessee shall have the privilege of using free of charge sufficient water, oil and gas from the said premises to run all machinery necessary for drilling and operations thereon, and at any time to remove all machinery and fixtures placed on said premises.

15.   No well shall be drilled by Lessee within 200 feet of the dwelling house or barn now on said premises, except by consent of Lessor.

16.   The leased premises may be fully and freely used by Lessor for any purpose, excepting such parts as are used by Lessee in operation hereunder.

17.   Lessee shall pay Lessor for all damages to growing crops, fences or trees caused by Lessee's operations and shall bury all permanent pipelines below plow depth through cultivated areas upon request of Lessor or within a reasonable length of time thereafter.

18.   This instrument may be executed in counterparts each having the same validity as if the original. Should any one or more of the parties named as Lessor fail to execute this lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor.

1094   61

19.       For the purpose of conserving the interest of the parties hereto and protecting said premises, and the oil or gas field within which the same are included from unnecessary and wasteful drilling and undue depletion of its resources, Lessor further grants to the Lessee, its heirs and assigns, the right to consolidate the above described premises or any part thereof at the option of Lessee with other uniform leases a unit not to exceed 640 acres for development in the association of it, said unit may together with others in the area had heretofore been leased by various people to the Lessee are eight undivided interest and in such event Lessor agree to accept, in lieu of the royalty herenbefore recited, such proportion of one eighth (1/8) of theoil or gas produced from the unitized area as his acreage included therein bears to the total acreage on the unitized area. Lessee may give notice to Lessee of such consolidation by mail to the above address or by filing of declaration of record describing the properties so consolidated or unitized.

All the terms, conditions, limitations and covenants herein contained shall be binding upon the parties hereto and shall extend to and be binding upon their respective heirs, successors, personal representatives and assigns, but no representations other than those herein contained shall be binding on either party.

IN WITNESS WHEREOF, the parties to this agreement have hereunto set their hands and seals the day and year first above written.

x _Lee H. Snyder_ (Seal)
Lee H. Snyder
Social Security No. 232-AL-Q.3.49

x _Olive H. Snyder_ (Seal)
Olive H. Snyder
Social Security No.

233 - 72 - 5588 (Seal)

COMMONWEALTH OF PENNSYLVANIA

1094    62

COUNTY OF _____

On this, the _____ day of _____, 19___, before

me _____ the undersigned officer,

personally appeared _____

_____

satisfactorily proven to me to be the person ___ whose name ___ subscribed to the within instru-

ment, and acknowledged that ___ executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

*FLORIDA*

STATE OF ~~WEST VIRGINIA~~  } TO WIT:

COUNTY OF *PASCO*

I, *VERN J REYFORD*, a Notary Public in and for the County of *PASCO*

and State aforesaid, do certify that *LEE H SNYDER AND ALIVE H SNYDER,*

*HIS WIFE,* whose name ___ signed to the writing above, bearing

date the *19th* day of *OCTOBER*, 19 *74*, has this day acknowledged the same before me in

my said County and State aforesaid.

Given under my hand and Official Seal this *21st* day of *OCTOBER* 19 *74*

NOTARY PUBLIC STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES SEPT. 4, 1943
BONDED THRU GENERAL INS. UNDERWRITERS    *Vern J Reyford*    (Seal)

STATE OF ~~OHIO~~ *FLORIDA*  } SS:

COUNTY OF *PASCO*

On this *21st* day of *OCTOBER* A. D. 19 *74*, before

me a *NOTARY PUBLIC* in and for said county, personally appeared the above

named *LEE H SNYDER AND ALIVE H SNYDER, HIS*

*WIFE* to me personally known to be the party __ named in and who executed the within agreement as *a*

free and voluntary act and acknowledged to be *THEIR* act and deed for the uses and purposes therein expressed and

mentioned.

WITNESS my hand and SEAL the day and year aforesaid.

_____

NOTARY PUBLIC STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES SEPT. 4, 1943
BONDED THRU GENERAL INS. UNDERWRITERS

This instrument was presented to the Clerk
of the County Commission of Harrison County,
West Virginia, on and the same is admitted *7-28-80*
to record.

Teste: _____ CLERK
Harrison County Commission

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

BK1516 PG0717

Susan J Thomas
HARRISON County 03:19:43 PM
Instrument No 201300041532
Date Recorded 08/13/2013
Document Type LEA
Pages Recorded 4
Book-Page        1516-717
Recording Fee $5.00
Additional    $6.00

STATE OF WEST VIRGINIA )
                        )
COUNTY OF HARRISON     )
                        )
                        )
                        )
                        )
                        )
                        )

_____
          (Above This Line Reserved For Official Use Only)

LESSOR:   Susan S. Rine, Heir of Lee H. Snyder, whose address is:
          11127 Dormine Drive, San Antonio, FL 33576

LESSEE:   Antero Resources Corporation, whose address is:
          1625.17th Street, Denver, CO 80202

## MODIFICATION OF OIL AND GAS LEASE

THIS AGREEMENT IS MADE AND ENTERED INTO on this 24th day of July, 2013, by and between Susan S. Rine, Heir of Lee H. Snyder, party of the first part, hereinafter referred to as "Lessor", and Antero Resources Corporation, a Delaware Corporation, parties of the second part, hereinafter referred to as "Lessee".

WHEREAS, heretofore, on the 19th day of October, 1979, Lee H. Snyder and Olive W. Snyder, as Lessor, executed and delivered to Robert L. Matthey Jr., as Lessee, a certain Oil and Gas Lease, covering the following described land situate in Union District, Harrison County, State of West Virginia,
to-wit:

107 acres, more or less in the Union District, County of Harrison, State of West Virginia, bounded substantially by lands now or formerly owned as follows:

On the North by lands of Cora Howell
On the East by lands of Nathan Matheny
On the South by lands of Henry Moore
On the West by lands of Alvin Lawson

said oil and gas lease being of record in Deed Book 1094, Page 59 of the land records of Harrison County, West Virginia (the "Lease").

WHEREAS, Lessee has acquired or otherwise owns an interest in all of or a portion of the above lands covered by said Lease and Lessor and Lessee desire to modify the Lease to include certain additional terms and provisions as hereinafter set out.

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00), the mutual desire of the parties to amend said Lease, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, it is hereby agreed and understood that the said Lease is hereby amended to include the following provisions:

POOLING     Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s) (each a "Pooled Area"), as to any one or more formations, said land or any part thereof and the leasehold estates therein in the vicinity of said land, whether contiguous or noncontiguous, held by Lessee or other lessees, when in Lessee's judgment, it is necessary or advisable to develop and operate efficiently such lands. Any such Pooled Area shall not exceed 80 acres for oil and 640 acres for gas; provided, however, that larger Pooled Areas may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. Lessee, alone or with other lessees, may form any Pooled Area before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer of title to any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the Pooled Area, shall be considered for all purposes (except as to royalties and the use of free gas) as if said well were located on, or such operations were conducted upon, the lands covered by this lease whether or not such well is located upon or such operations are conducted upon said lands. The royalties provided for in the lease shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the Pooled Area(s) bears to the total Pooled Area.  Lessee shall have the right but not the obligation, to

BK1516 PG0718

reduce, enlarge, or modify such Pooled Area(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised Pooled Area. At any time the Pooled Area is not being operated as aforesaid, the declaration of pooling may be surrendered and cancelled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

The authority to pool as provided hereunder is limited INSOFAR AND ONLY INSOFAR as to cover the "Target Rights" assigned to Lessee. As used herein, "Target Rights" means those depths insofar and only insofar as to all rights below the top of the Rhinestreet Formation (as seen by the Bear Rock#1 well, API#37-051-22785, at a depth of 4803').

**Hold Harmless Clause**
Lessee agrees to indemnify, protect, save harmless and defend Lessor from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property occurring as a result of Lessee's (or Lessee's assignees, their employees, agents, contractors and subcontractors) use of the leased premises, or as a result of loss, expense, injury, death or damage, which would not have occurred but for Lessee's use of the leased premises, except to the extent any such damage or injury is caused by Lessor's negligence.

**Indemnification.** LESSEE AGREES TO INDEMNIFY AND HOLD HARMLESS LESSOR, AND LESSOR'S REPRESENTATIVES, AGENTS, EMPLOYEES, SERVANTS, CONTRACTORS, AND ANY OTHER PERSON ACTING UNDER LESSOR'S DIRECTION AND/OR CONTROL, LESSOR'S INDEPENDENT CONTRACTORS, AND LESSOR'S SUCCESSORS AND ASSIGNS, AGAINST ALL EXPENSES, CLAIMS, DEMANDS, LIABILITIES, AND CAUSES OF ACTION OF ANY NATURE FOR INJURY TO OR DEATH OF PERSONS AND LOSS OR DAMAGE TO PROPERTY, INCLUDING, WITHOUT LIMITATION, ATTORNEY FEES, EXPERT FEES, AND COURT COSTS, CAUSED BY LESSEE'S OPERATIONS ON THE LEASED PREMISES OR LESSEE'S MARKETING OF PRODUCTION FROM THE LEASED PREMISES OR ANY VIOLATION OF ANY ENVIRONMENTAL REQUIREMENTS BY LESSEE. AS USED IN THIS PARAGRAPH, THE TERM "LESSEE" INCLUDES LESSEE, ITS AGENTS, EMPLOYEES, SERVANTS, CONTRACTORS, AND ANY OTHER PERSON ACTING UNDER ITS DIRECTION AND CONTROL, AND ITS INDEPENDENT CONTRACTORS. THIS INDEMNITY SHALL BE AS GREAT AS THE LAW ALLOWS, AND LESSEE SHALL INDEMNIFY AND HOLD LESSOR HARMLESS FOR ALL LOSS, COST, DAMAGE OR EXPENSE OF EVERY KIND AND NATURE, WHETHER THE RESULT OF THE SOLE NEGLIGENCE, CONCURRENT OR COMPARATIVE NEGLIGENCE, OR STRICT LIABILITY OF LESSEE, TO THE EXTENT, AND ONLY TO THE EXTENT, THE FOREGOING INDEMNITIES ARE, BY LAW, ONLY ENFORCEABLE IF SUPPORTED BY AVAILABLE LIABILITY INSURANCE, LESSEE AGREES THAT THE INSURANCE PROVIDED FOR IN SECTION 23 IS INTENDED TO SATISFY ANY COVERAGES AND DOLLAR LIMITS OF LIABILITY PROVIDED BY APPLICABLE STATUTES. TO THE EXTENT, AND ONLY TO THE EXTENT, THE FOREGOING INDEMNITIES ARE, BY LAW, EITHER INAPPLICABLE OR NOT ENFORCEABLE, LESSEE AND LESSOR SHALL EACH BE RESPONSIBLE FOR THE RESULTS OF ITS OWN ACTIONS AND FOR THE ACTIONS OF THOSE PERSONS AND ENTITIES OVER WHICH IT EXERCISES CONTROL. LESSEE'S INDEMNITY OBLIGATIONS SURVIVE THE TERMINATION OF THIS LEASE.

For the same consideration recited above, each of the undersigned does hereby adopt, ratify, and confirm the Lease as amended, and does hereby grant, lease, and let, unto the Lessee therein and its, successors and assigns, any and all interest in and to the lands described therein currently owned or that may hereafter be acquired, either by conveyance, devise, inheritance, or operation of law, and whether, vested, expectant, contingent or future, and in accordance with each and all of the provisions contained in the Lease as amended hereby, and each does hereby declare that the Lease is a valid and subsisting oil and gas lease and all of its provisions are binding upon the undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned. Upon the reasonable request to do so, each of the undersigned agrees to execute, acknowledge and to deliver any additional instruments, notices, division orders, transfer orders and other documents, to provide additional information and to do any other acts and things which may be necessary or desirable to allow payment of any royalties that

BK1516 PG0719

may be due or that may become due or to more fully and effectively protect the interest of the Lessee, its successors and/or assigns in and to the property intended to be covered hereby.

IN WITNESS WHEREOF:

SIGNED:

*Susan S Rine*
Susan S. Rine

### INDIVIDUAL ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF : HILLSBOROUGH

This instrument was acknowledged before me on the 2ND day of August, 2013, by Susan S. Rine.

My Commission Expires: 4/24/17

Notary Public

KAREN HALSEY
MY COMMISSION # EE 884204
EXPIRES: April 24, 2017
Bonded Thru Notary Public Underwriters

Prepared by: Antero Resources Corporation, PO Box 410, Bridgeport, West Virginia, 26330

BK1516 PG0728

Please return to: Antero Resources Corporation, PO Box 410, Bridgeport, West Virginia, 26330

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

BK 1 5 1 7 PG 0 1 8 9

Susan J. Thomas
HARRISON County 11:06:42 AM
Instrument No 201300043947
Date Recorded 08/26/2013
Document Type LEA
Pages Recorded 4
Book-Page    1517-189
Recording Fee $5.00
Additional    $6.00

STATE OF WEST VIRGINIA    )
                          )
COUNTY OF HARRISON        )
                          )
                          )
                          )
                          )
                          )

(Above This Line Reserved For Official Use Only)

LESSOR:    Debra Snyder Miller, Heir of Lee H. Snyder, whose address is:
           10115 Deer Lane, New Port Richey, FL 34654

LESSEE:    Antero Resources Corporation, whose address is:
           1625 17th Street, Denver, CO 80202

MODIFICATION OF OIL AND GAS LEASE

THIS AGREEMENT IS MADE AND ENTERED INTO on this 24th day of July, 2013, by and between Debra Snyder Miller, Heir of Lee H. Snyder, party of the first part, hereinafter referred to as "Lessor", and Antero Resources Corporation, a Delaware Corporation, parties of the second part, hereinafter referred to as "Lessee".

WHEREAS, heretofore, on the 19th day of October, 1979, Lee H. Snyder and Olive W. Snyder, as Lessor, executed and delivered to Robert L. Matthey Jr., as Lessee, a certain Oil and Gas Lease, covering the following described land situate in Union District, Harrison County, State of West Virginia, to-wit:

107 acres, more or less in the Union District, County of Harrison, State of West Virginia, bounded substantially by lands now or formerly owned as follows:

On the North by lands of Cora Howell
On the East by lands of Nathan Matheny
On the South by lands of Henry Moore
On the West by lands of Alvin Lawson

said oil and gas lease being of record in Deed Book 1094, Page 99 of the land records of Harrison County, West Virginia (the "Lease").

WHEREAS, Lessor has acquired or otherwise owns an interest in all of or a portion of the above lands covered by said Lease and Lessor and Lessee desire to modify the Lease to include certain additional terms and provisions as hereinafter set out.

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00), the mutual desire of the parties to amend said Lease, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, it is hereby agreed and understood that the said Lease is hereby amended to include the following provisions:

POOLING    Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s) (each a "Pooled Area"), as to any one or more formations, said land or any part thereof and the leasehold estates therein in the vicinity of said land, whether contiguous or noncontiguous, held by Lessee or other lessees, when in Lessee's judgment, it is necessary or advisable to develop and operate efficiently such lands. Any such Pooled Area shall not exceed 80 acres for oil and 640 acres for gas; provided, however, that larger Pooled Areas may be created to conform to, any well spacing or unit pattern prescribed by any governmental authority. Lessee, alone or with other lessees, may form any Pooled Area before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer of title to any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the Pooled Area, shall be considered for all purposes (except as to royalties and the use of free gas) as if said well were located on, or such operations were conducted upon, the lands covered by this lease whether or not such well is located upon or such operations are conducted upon said lands. The royalties provided for in the lease shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the Pooled Area(s) bears to the total Pooled Area. Lessee shall have the right but not the obligation, to

BK1517 PG0190

reduce, enlarge, or modify such Pooled Area(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interest in the revised Pooled Area. At any time the Pooled Area is not being operated as aforesaid, the declaration of pooling may be surrendered and cancelled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

The authority to pool as provided hereunder is limited INSOFAR AND ONLY INFOFAR as to cover the "Target Rights" assigned to Lessee. As used herein, "Target Rights" means those depths insofar and only insofar as to all rights below the top of the Rhinestreet Formation (as seen by the Bear Rocks#1 well, API#37-051-22785, at a depth of 4805').

**Hold Harmless Clause**
Lessee agrees to indemnify, protect, save harmless and defend Lessor from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property occurring as a result of Lessee's (or Lessee's assignees, their employees, agents, contractors and subcontractors) use of the leased premises, or as a result of loss, expense, injury, death or damage, which would not have occurred but for Lessee's use of the leased premises, except to the extent any such damage or injury is caused by Lessor's negligence.

**Indemnification.** LESSEE AGREES TO INDEMNIFY AND HOLD HARMLESS LESSOR, AND LESSOR'S REPRESENTATIVES, AGENTS, EMPLOYEES, SERVANTS, CONTRACTORS, AND ANY OTHER PERSON ACTING UNDER LESSOR'S DIRECTION AND/OR CONTROL, LESSOR'S INDEPENDENT CONTRACTORS, AND LESSOR'S SUCCESSORS AND ASSIGNS, AGAINST ALL EXPENSES, CLAIMS, DEMANDS, LIABILITIES, AND CAUSES OF ACTION OF ANY NATURE FOR INJURY TO OR DEATH OF PERSONS AND LOSS OR DAMAGE TO PROPERTY, INCLUDING, WITHOUT LIMITATION, ATTORNEY FEES, EXPERT FEES, AND COURT COSTS, CAUSED BY LESSEE'S OPERATIONS ON THE LEASED PREMISES OR LESSEE'S MARKETING OF PRODUCTION FROM THE LEASED PREMISES OR ANY VIOLATION OF ANY ENVIRONMENTAL REQUIREMENTS BY LESSEE. AS USED IN THIS PARAGRAPH, THE TERM "LESSEE" INCLUDES LESSEE, ITS AGENTS, EMPLOYEES, SERVANTS, CONTRACTORS, AND ANY OTHER PERSON ACTING UNDER ITS DIRECTION AND CONTROL, AND ITS INDEPENDENT CONTRACTORS. THIS INDEMNITY SHALL BE AS GREAT AS THE LAW ALLOWS, AND LESSEE SHALL INDEMNIFY AND HOLD LESSOR HARMLESS FOR ALL LOSS, COST, DAMAGE OR EXPENSE OF EVERY KIND AND NATURE, WHETHER THE RESULT OF THE SOLE NEGLIGENCE, CONCURRENT OR COMPARATIVE NEGLIGENCE, OR STRICT LIABILITY OF LESSEE. TO THE EXTENT, AND ONLY TO THE EXTENT, THE FOREGOING INDEMNITIES ARE, BY LAW, ONLY ENFORCEABLE IF SUPPORTED BY AVAILABLE LIABILITY INSURANCE, LESSEE AGREES THAT THE INSURANCE PROVIDED FOR IN SECTION 23 IS INTENDED TO SATISFY ANY COVERAGES AND DOLLAR LIMITS OF LIABILITY PROVIDED BY APPLICABLE STATUTES. TO THE EXTENT, AND ONLY TO THE EXTENT, THE FOREGOING INDEMNITIES ARE, BY LAW, EITHER INAPPLICABLE OR NOT ENFORCEABLE, LESSEE AND LESSOR SHALL EACH BE RESPONSIBLE FOR THE RESULTS OF ITS OWN ACTIONS AND FOR THE ACTIONS OF THOSE PERSONS AND ENTITIES OVER WHICH IT EXERCISES CONTROL. LESSEE'S INDEMNITY OBLIGATIONS SURVIVE THE TERMINATION OF THIS LEASE.

For the same consideration recited above, each of the undersigned does hereby adopt, ratify, and confirm the Lease as amended, and does hereby grant, lease, and let, unto the Lessee therein and its successors and assigns, any and all interest in and to the lands described therein currently owned or that may hereafter be acquired, either by conveyance, devise, inheritance, expectation of law, and whether, vested, expectant, contingent or future, and in accordance with each and all of the provisions contained in the Lease as amended hereby, and each does hereby declare that the Lease is a valid and subsisting oil and gas lease and all of its provisions are binding upon the undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned. Upon the reasonable request to do so, each of the undersigned agrees to execute, acknowledge and to deliver any additional instruments, notices, division orders, transfer orders and other documents, to provide additional information and to do any other acts and things which may be necessary or desirable to allow payment of any royalties that

BK 1517 PG0191

may be due or that may become due or to more fully and effectively protect the interest of the Lessee, its successors and/or assigns in and to the property intended to be covered hereby.

IN WITNESS WHEREOF:

SIGNED:

_____
Debra Miller

**INDIVIDUAL ACKNOWLEDGEMENT**

STATE OF ~~FLORIDA~~ Georgia
COUNTY OF _Dade_

This instrument was acknowledged before me on the _30th_ day of _July_, 2013, by Debra Miller.

My Commission Expires: _____

MY COMMISSION EXPIRES JUNE 9, 2015

_____
Notary Public

BK 1517 PG 0192

Prepared by: Antero Resources Corporation, PO Box 418, Bridgeport, West Virginia, 26330

Please return to: Antero Resources Corporation, PO Box 418, Bridgeport, West Virginia, 26330

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October 2017, I electronically filed the foregoing "Second Amended Class Action Complaint" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

W. Henry Lawrence (WV Bar #2156)
Amy M. Smith (WV Bar #6454)
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
Email: hank.lawrence@steptoe-johnson.com
       amy.smith@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANT**
**ANTERO RESOURCES CORPORATION**

*/s/ L. Lee Javins*