IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKLIN ROMEO,
Individually and on behalf
of others similarly situated;
SUSAN S. RINE,
Individually and on behalf
of others similarly situated;
DEBRA SNYDER MILLER,
Individually and on behalf
of others similarly situated,

        Plaintiffs,

v.                    //     CIVIL ACTION NO. 1:17CV88
                                    (Judge Keeley)

ANTERO RESOURCES CORP.,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 34]**

This case involves a breach of contract claim related to royalty payments for natural gas interests. The plaintiffs, Jacklin Romeo ("Romeo"), Susan S. Rine ("Rine"), and Debra Snyder Miller ("Miller")(collectively, "the plaintiffs"), each allege ownership of an oil and gas interest in Harrison County, West Virginia, subject to existing oil and gas leases, under which the lessee's interest has been assigned to the defendant, Antero Resources Corporation ("Antero"). The plaintiffs allege that Antero has breached its contractual obligations under the royalty provisions of the lease agreements by improperly deducting post-production

costs and failing to pay royalties based upon the price received at the point of sale (Dkt. No. 31).

Pending before the Court is Antero's motion to dismiss the plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 34). For the reasons that follow, the Court **DENIES** the motion.

## I. BACKGROUND

The Court takes the facts from the second amended complaint and construes them in the light most favorable to the plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). Romeo is the assignee of a portion of the lessors' interest under a March 14, 1984 lease agreement between lessors Jessie J. Nixon, Betty Nixon, Mary Alice Vincent, and Hubert L. Vincent, and lessee Clarence W. Mutschelknaus. Antero has acquired the lessee's rights and obligations. Id. at 5-6. The royalty provision of the agreement, which is attached to the second amended complaint, contains the following language:

> In consideration of the premises, the said [Lessee] covenants and agrees: First, to deliver monthly to the credit of the Lessors, their heirs or assigns, free of costs, in a pipeline, to which Lessee may connect its wells, Lessors' proportionate share of the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and second, to pay monthly Lessor's proportionate share of the one-eighth (1/8) of the *value*

2

> *at the well* of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8) of the net value at the factory of the gasoline and other gasoline products manufactured from casinghead gas.

Id. at 6 (emphasis added).

Rine and Miller are assignees of portions of the lessors' interest under an October 19, 1979 lease between lessors Lee H. Snyder and Olive W. Snyder and lessee Robert L. Matthey, Jr. Antero was assigned the lessee's interest sometime prior to January 1, 2009. Id. at 6-7. The royalty provision of the original agreement, which is attached to the second amended complaint, contains the following language:

> (a)  Lessee covenants and agrees to deliver to the credit of the Lessor, his heirs or assigns, free of cost, in the pipe line to which said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.
>
> (b)  Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eighth (1/8) of the gross *proceeds received from the sale of the same at the prevailing price for gas sold at the well*, for all native gas saved and marketed from the said premises, payable quarterly.

Id. at 8-9 (emphasis added).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 34]**

According to the plaintiffs, gas produced under the agreements consists of "wet gas" saturated with liquid hydrocarbons and water that must be treated and processed to obtain marketable "residue gas." Likewise, the gas contains valuable liquid hydrocarbon components that must be extracted and fractionated prior to sale. Id. at 9-10.

Because none of the royalty provisions at issue expressly permit the deduction of post-production costs, the plaintiffs contend that West Virginia law imposes a duty on Antero to calculate royalties based on the price it receives from third parties for the residue gas and natural gas liquids ("NGLs") *without* deductions. The plaintiffs further allege that, despite this duty, Antero has failed to pay a full 1/8th royalty on the sale price for residue gas and NGLs, and instead have been deducting various post-production costs. Id. at 11-13.

During the initial scheduling conference in the case, for good cause, the Court granted the plaintiffs leave to file a second amended complaint (Dkt. No. 26). Thereafter, the plaintiffs filed their second amended complaint (Dkt. No. 31), which reflects a number of changes, namely regarding the chain of title for the leases at issue, the plaintiffs' performance under the leases, and

the deductions Antero has allegedly made in the calculation of the plaintiffs' royalties.

Now pending is Antero's motion to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 34) on the basis that the plaintiffs have not adequately pleaded a claim for breach of contract, that the plain language of the oil and gas leases at issue precludes the plaintiffs' allegations, and that the plaintiffs' reliance on Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (W. Va. 2001), and Tawney v. Columbia Natural Resources, LLC, 633 S.E.2d 22 (W. Va. 2006), is misplaced (Dkt. Nos. 18; 34). The motion is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing a complaint, the Court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007)(quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

In deciding on the motion, the court need not confine its inquiry to the complaint; it may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The court may

also consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III. DISCUSSION

**A.    Pleading Standard**

In its motion to dismiss, Antero argues that the plaintiffs have not "cured the pleading deficiencies identified by the Court" during the scheduling conference (Dkt. No. 34 at 1). As the parties acknowledge in their briefing, this Court has consistently stated:

> Under West Virginia law, a prima facie breach of contract claim requires the plaintiff to allege four elements: (1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result.

Corder v. Antero Res. Corp., No. 1:18CV30, 2018 WL 2925128, at *5 (N.D.W.Va. June 11, 2018)(citing KBS Preowned Vehicles, LLC v. Reviva, Inc., No. 1:13cv138, 2014 WL 12591890, at *2 (N.D.W.Va. Mar. 26, 2014)); Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013 WL 5352844, at *11 (N.D.W.Va. Sept. 24, 2013); see also Charleston Nat'l Bank v. Sims, 70 S.E.2d 809, 813 (W. Va. 1952)(quoting Jones v. Kessler, 126 S.E. 344 (W. Va. 1925)).

7

First, Antero argues that the plaintiffs have not adequately pled "the chains of title showing how Antero became the assignee or how [the plaintiffs] became the lessors under the lease agreements" (Dkt. No. 34 at 1). Antero correctly notes that this Court's precedent requires the plaintiffs to allege the parties' connection to the oil and gas leases at issue. See, e.g., Cather v. Seneca-Upshur Petroleum, Inc., No. 1:09CV139, 2010 WL 3271965, at *3-4 (N.D.W.Va. Aug. 18, 2010)(allowing the plaintiff to file an amended complaint detailing the corporate merger that resulted in defendant Forest Oil's interest where the plaintiff alleged only that Forest Oil was "a lessee or ultimate assignee of the leases" at issue).

Upon review, the Court finds that the second amended complaint alleges facts sufficient to establish the plaintiffs'--and Antero's--connection to each lease through the record chains of title (Dkt. No. 31 at 5-8). Cf. Rodgers v. Sw. Energy Co., No. 5:16-CV-54, 2016 WL 3248437, at *2 (N.D.W.Va. June 13, 2016)(Bailey, J.)(allowing plaintiffs to amend breach of contract claim where they "did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the amounts paid or underpaid, *or any other specific details regarding the contract*")(emphasis added). Accordingly, the second

amended complaint alleges the existence of enforceable contracts between the plaintiffs and Antero with sufficient specificity to survive the motion to dismiss.

Second, Antero argues that the plaintiffs have failed to adequately allege that "they have contractual obligations or that they performed their obligations under their leases" (Dkt. No. 34 at 3). As this Court has previously observed, however, "[t]his is a light burden; <u>Twombly</u> does not require the plaintiffs to plead factual support for a <u>prima facie</u> case, so long as their allegations make it factually plausible that the defendants are liable for the misconduct alleged." <u>Corder</u>, 2018 WL 2925128, at *6 (citing <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 788–89 (3d Cir. 2016)). Following the scheduling conference, the plaintiffs took the opportunity to address their performance in their second amended complaint, which sufficiently alleges that they have fulfilled their obligations under the leases (Dkt. No. 31 at 13).

Third, and finally, Antero argues that the plaintiffs have not adequately pled "what deductions were allegedly taken in violation of the leases" (Dkt. No. 34 at 3). Contrary to Antero's assertion, however, the plaintiffs allege that, in calculating royalty payments owed to them under the lease agreements, Antero has breached its contractual obligations by failing to pay them

royalties based upon prices received for marketable natural gas products at the point of sale. Specifically, the plaintiffs allege that Antero has taken numerous post-production deductions from the sale price, including deductions for "treating, compression, fuel, gathering, transportation . . ., processing, [and] fractionation" (Dkt. No. 31 at 11). Accordingly, the second amended complaint adequately alleges that Antero has breached its obligations under the lease agreements, and that the plaintiffs have been injured as a result.

Therefore, because the plaintiffs have corrected the pleading deficiencies identified during the scheduling conference, it concludes that they have adequately pleaded a claim for breach of contract.

**B. Matter of Law**

Antero also renews its argument that the plaintiffs have failed to state a claim for breach of contract as a matter of law because the leases at issue allow Antero to deduct post-production costs (Dkt. Nos. 34 at 4; 18 at 7-25).

As an initial matter, neither of the leases at issue is a flat-rate lease subject to W. Va. Code § 22-6-8. Therefore, as the Supreme Court of Appeals of West Virginia ("Supreme Court of

Appeals") has noted, the leases are "unaffected" by <u>Leggett v. EQT Prod. Co.</u>, 800 S.E.2d 850, 853, <u>cert. denied</u>, -- U.S. -- (W. Va. 2017). Instead, the leases remain governed by the Supreme Court of Appeals's analysis in <u>Wellman v. Energy Res., Inc.</u>, 557 S.E.2d 254 (W. Va. 2001); and <u>Estate of Tawney v. Columbia Nat. Res., L.L.C.</u>, 633 S.E.2d 22 (W. Va. 2006). <u>See also</u> <u>Corder</u>, 2018 WL 2925128, at *6 (applying <u>Wellman</u> and <u>Tawney</u> to leases unaffected by <u>Leggett</u>).

In <u>Wellman</u>, the oil and gas lease at issue contained the following royalty provision:

> Lessee agrees to deliver to Lessor, in tanks, tank cars, or pipe line, a royalty of one-eighth (1/8) of all oil produced and saved from the premises, and to pay to Lessor for gas produced from any oil well and used by Lessee for the manufacture of gasoline or any another product as royalty one-eighth (1/8) of the market value of such gas at the mouth of the well; is [if] such gas is sold by the Lessee, then as royalty one-eighth (1/8) of the proceeds from the sale of gas as such at the mouth of the well where gas, condensate, distillate or other gaseous substance is found.

557 S.E.2d at 257-58.

The question presented was whether the operator could deduct certain post-production costs under the clause providing for "1/8th of the proceeds from the sale of gas as such at the mouth of the well." <u>Id.</u> at 263. Noting that a landowner's royalties are typically "not chargeable with any of the costs of discovery and production," the Supreme Court of Appeals looked with disfavor on

recent attempts "to charge the landowner with a pro rata share of various expenses connected with the operation of an oil and gas lease such as expense of transporting oil and gas to a point of sale, and the expense of treating or altering the oil and gas so as to put it in a marketable condition." Id. at 264.

The court reasoned instead that the implied duty to market oil and gas "embraces the responsibility to get the oil and gas in marketable condition and actually transport it to market." Id. It held "that if an oil and gas lease provides for a royalty based on proceeds received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Id. at 265. Importantly, the court further reasoned:

> Although this Court believes that the language of the leases in the present case indicating that the "proceeds" shall be from the "sale of gas as such at the mouth of the well where gas . . . is found" might be language indicating that the parties intended that the Wellmans, as lessors, would bear part of the costs of transporting the gas from the wellhead to the point of sale, whether that was actually the intent and the effect of the language of the lease is moot because Energy Resources, Inc., introduced no evidence whatsoever to show that the costs were actually incurred or that they were reasonable.

Id. at 266.

Later, in <u>Tawney</u>, the Supreme Court of Appeals was asked to decide if a lease "provides otherwise" under <u>Wellman</u> by indicating "that the lessor's 1/8 royalty is to be calculated 'at the well,' 'at the wellhead' or similar language, or that the royalty is 'an amount equal to 1/8 of the price, net of all costs beyond the wellhead,' or 'less all taxes, assessment, and adjustments.'" 633 S.E.2d at 24. The operator argued that the only logical way to calculate the value of the gas "at the wellhead" was to subtract post-production costs from the sale price, while the plaintiffs argued that the language was silent or ambiguous and should be construed against the lessee, thereby leaving <u>Wellman</u> applicable to the language. <u>Id.</u> at 26.

At bottom, the dispute in <u>Tawney</u> involved "whether the 'at the wellhead'-type language at issue is sufficient to alter our generally recognized rule that the lessee must bear all costs of marketing and transporting the product to the point of sale." <u>Id.</u> at 28. Finding such general language to be ambiguous because it did "not indicate *how* or *by what method* the royalty is to be calculated or the gas is to be valued," the court further reasoned that "the general language at issue simply is inadequate" to express the parties' intent to overcome the "traditional rule that lessors are

to receive a royalty of the sale price of gas." Id. (emphasis in original).

Despite Wellman's dicta regarding value at "the mouth of the well," the court found that "wellhead"-type language in a lease is ambiguous because it lacks any definite description of how the parties may have intended to act contrary to the marketable product rule discussed in Wellman. The Supreme Court of Appeals therefore construed the language against the lessee, holding that:

> Language in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of sale must expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty (usually 1/8), and indicate the method of calculating the amount to be deducted from the royalty for such post-production costs.

Id., Syl. Pt. 10. The language at issue in the case - "at the well," "at the wellhead," or similar language - was insufficient to meet this requirement because of its ambiguity. Id., Syl. Pt. 11.

Here, the royalty provisions in the lease agreements at issue appear to require royalty payments based on the market price due to either of the following clauses: (1) "value at the well," or (2) "gross proceeds received from the sale of the same at the prevailing price" (Dkt. No. 31 at 6, 9). Accordingly, this Court

concludes, as it did in <u>Corder</u>, that Antero has failed to identify any provision rendering the lease agreements at issue "unambiguous enough to escape" <u>Wellman</u> and <u>Tawney</u>. <u>Corder</u>, 2018 WL 2925128, at *6. As Judge Bailey pointedly stated in <u>Kay Co., LLC v. EQT Prod. Co.</u>: "[A]ny criticism of <u>Tawney</u> and <u>Wellman</u> contained within <u>Leggett</u> is mere dicta and does not alter the current controlling nature of those precedents." No. 1:13-CV-151, 2017 WL 6403031, at *1 (N.D.W.Va. July 11, 2017). Accordingly, an operator's "dislike of <u>Tawney</u> and <u>Wellman</u> and its hope that a majority of the [Supreme Court of Appeals] might disavow them in the future does not change the current controlling nature of those precedents on issues pending before this Court." <u>Id.</u> at *2 (denying operator's motion to certify to the Supreme Court of Appeals the question of the continued validity of <u>Tawney</u> in light of that court's decision in <u>Leggett</u>).

## IV. CONCLUSION

Therefore, for the reasons discussed, the Court **DENIES** Antero's motion to dismiss the plaintiffs' breach of contract claim (Dkt. No. 34) and **LIFTS** the stay of discovery previously entered in the case (Dkt. No. 27). It **DIRECTS** the parties to submit an amended Rule 26(f) meeting report within thirty (30) days from the entry of

this Order, following which it will set a further scheduling conference as needed.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 5, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE