IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKLIN ROMEO,
Individually and on behalf
of others similarly situated;
SUSAN S. RINE,
Individually and on behalf
of others similarly situated;
DEBRA SNYDER MILLER,
Individually and on behalf
of others similarly situated,

        Plaintiffs,

v.                            CIVIL ACTION NO. 1:17CV88
                                        (Judge Keeley)

ANTERO RESOURCES CORP.,

        Defendant.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

In this breach of contract case, the plaintiffs, Jacklin Romeo ("Romeo"), Susan S. Rine ("Rine"), and Debra Snyder Miller ("Miller") (collectively, "the Plaintiffs"), individually and on behalf of others similarly situated, allege that the defendant, Antero Resources Corporation ("Antero"), breached its obligations under the royalty provisions of two types of lease agreements by improperly deducting post-production costs and failing to pay royalties based upon the price received at the point of sale (Dkt. No. 31). The Plaintiffs moved to certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) (Dkt.

## MEMORANDUM OPINION AND
### ORDER DENYING MOTIONS TO EXCLUDE
### [DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
### [DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
### [DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
### REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

No. 100), which Antero opposes. Antero also moved to exclude expert witnesses and to strike certain declarations and exhibits filed by the Plaintiffs in support of their motion for class certification (Dkt. No. 142).

After careful review, and for the reasons that follow, the Court **DENIES** Antero's motions to exclude (Dkt. Nos. 96, 97), **DENIES** Antero's motion to strike (Dkt. No. 142), and **GRANTS** the Plaintiff's motion for class certification (Dkt. No. 100). The Court further **DEFINES** the certified class, **APPOINTS** class representatives and counsel, **DIRECTS** class counsel to submit a proposed Notice of Certification, and **SCHEDULES** a status conference.

## I. BACKGROUND

### A.    Factual Background[1]

Romeo is the assignee of a portion of the lessors' interest under a March 14, 1984 lease agreement between lessors Jessie J.

---

[1]     The Court takes these facts from the second amended complaint and construes them in the light most favorable to the Plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

Nixon, Betty Nixon, Mary Alice Vincent, and Hubert L. Vincent, and

lessee Clarence W. Mutschelknaus ("the Mutschelknaus Lease").

Antero acquired the lessee's rights and obligations sometime prior

to January 1, 2009 (Dkt. No. 31 at 6). The royalty provision of the

Mutschelknaus Lease, which is attached to the second amended

complaint, contains the following language:

> In consideration of the premises, the said
> [Lessee] covenants and agrees: First, to
> deliver monthly to the credit of the Lessors,
> their heirs or assigns, free of costs, in a
> pipeline, to which Lessee may connect its
> wells, Lessors' proportionate share of the
> equal one-eighth (1/8) part of all oil
> produced and saved from the leased premises;
> and second, to pay monthly Lessor's
> proportionate share of the one-eighth (1/8) of
> the value at the well of the gas from each and
> every gas well drilled on said premises, the
> product from which is marketed and used off
> the premises, said gas to be measured at a
> meter set on the farm, and to pay monthly
> Lessors' proportionate share of the one-eighth
> (1/8) of the net value at the factory of the
> gasoline and other gasoline products
> manufactured from casinghead gas.

Id. at 6.

    Rine and Miller are assignees of portions of the lessors'

interest under an October 19, 1979 lease between lessors Lee H.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

Snyder, and Olive W. Snyder, and lessee Robert L. Matthey, Jr. ("the Matthey Lease"). Id. at 6-7. Ultimately, Matthey's interest in the lease was assigned to Antero sometime prior to July 17, 2012. Id. at 7-8. The royalty provision of the Matthey Lease, which is also attached to the second amended complaint, contains the following language:

> (a)  Lessee covenants and agrees to deliver to the credit of the Lessor, his heirs or assigns, free of cost, in the pipe line to which said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.

> (b)  Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of the same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly.

Id. at 8-9.

According to the Plaintiffs, gas produced under the agreements consists of "wet gas" saturated with liquid hydrocarbons and water that must be treated and processed to obtain marketable "residue gas." Likewise, the gas contains valuable liquid hydrocarbon

4

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

components that must be extracted and fractionated prior to sale. Id. at 9-10.

Because neither royalty provision at issue expressly permits the deduction of post-production costs, the Plaintiffs contend that West Virginia law imposes a duty on Antero to calculate royalties based on the price it receives from third parties for the residue gas and natural gas liquids ("NGLs") without deductions. The Plaintiffs further allege that, despite this duty, Antero has failed to pay a full 1/8th royalty on the sale price for residue gas and NGLs, and instead have been deducting various post-production costs. Id. at 11-13.

**B.   Procedural History**

After the Court denied Antero's motion to dismiss the second amended complaint, it limited the first phase of discovery to class certification. In July 2019, Antero filed motions to exclude the expert testimony of Daniel T. Reineke, P.E. ("Reineke"), and Donald A. Phend, C.P.A. ("Phend"). After the Plaintiffs moved to certify this case as a class action in August 2019, the Court held a hearing on the motions to exclude on September 27, 2019, and on the

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

motion for class certification on October 15, 2019, following which
it ordered supplemental briefing on various issues. Antero then
moved to strike certain declarations and exhibits filed by the
Plaintiffs in support of their motion for class certification.

## II. DISCUSSION

The Court turns first to Antero's motions to exclude and
strike various testimony and evidence.

## A.    Motions to Exclude

Pursuant to Federal Rule of Evidence 702, Antero moves to
exclude Reineke and Phend because their expert testimony "do[es]
not help the trier of fact to understand the evidence or to
determine a fact at issue, are not based on sufficient facts or
data, and are not the product of reliable principles and methods
reliably applied to the facts of this action" (Dkt. Nos. 96 at 1,
97 at 1). This is so, Antero insists, because their opinions are
not based on the language of the leases in question, but assert
numerous false premises or speculation, offer impermissible legal
conclusions, or are contrary to the facts of this case (Dkt. Nos.
96, 97). Antero's motions amount to little more than a veiled

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

attempt to defeat class certification.

### i.    Applicable Law

Rule 702 governs the admissibility of expert witness testimony. An expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "In assessing a proffered expert's qualifications, the district court must consider the proposed expert's full range of experience and training, not just his professional qualifications." Good v. Am. Water Works Co., Inc., 310 F.R.D. 274, 282 (S.D. W. Va. 2015) (cleaned up) (citations omitted). "While relevant qualifications are crucial, an expert need not be precisely informed about all details of the issues raised in order to offer an opinion." Id. (internal quotations and citation omitted).

"Once qualified, an expert's testimony is admissible if it will assist the trier of fact and is (1) 'based on sufficient facts or data,' (2) 'the product of reliable principles and methods,' and (3) 'the principles and methods [have been applied] reliably to the facts of the case.'" Id. (quoting Fed. R. Evid. 702). "Admissibility of such testimony is governed by a two-part test:

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

the evidence is admitted if 'it rests on a reliable foundation and

is relevant.'" Id. (quoting Daubert v. Merrell Dow Pharm., 509 U.S.

579, 597 (1993)). Relevance and reliability are guided by, among

other things:

> (1) whether the particular scientific theory
> "can be (and has been) tested"; (2) whether
> the theory "has been subjected to peer review
> and publication"; (3) the "known or potential
> rate of error"; (4) the "existence and
> maintenance of standards controlling the
> technique's operation"; and (5) whether the
> technique has achieved "general acceptance" in
> the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting

Daubert, 509 U.S. at 593-94).

"The court need not, however, consider all of the factors in

lockstep fashion." Good, 310 F.R.D. at 282. "Neither Rule 702 nor

case law establish a mechanistic test for determining the

reliability of an expert's proffered testimony." Id. Rather, "'the

test of reliability is flexible' and 'the law grants a district

court the same broad latitude when it decides how to determine

reliability as it enjoys in respect to its ultimate reliability

determination.'" United States v. Wilson, 484 F.3d 267, 274 (4th

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

Cir. 2007) (quoting <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141-42 (1999)).

"The gatekeeping role exercised by the district court is a critical one." <u>Good</u>, 310 F.R.D. at 283. "Inasmuch as expert witnesses have the potential to be both powerful and quite misleading, the court must ensure that any and all scientific testimony is not only relevant, but reliable." <u>Id.</u> (cleaned up) (citations omitted). But the "inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." <u>Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257, 261 (4th Cir. 1999) (quoting <u>Daubert</u>, 509 U.S. at 594-95). "The court is not obliged to determine that the proffered expert testimony is irrefutable or certainly correct—as with all other admissible evidence, expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." <u>Good</u>, 310 F.R.D. at 283 (cleaned up) (citations omitted).

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

### ii.  Daniel T. Reineke, P.E.

Antero seeks to exclude Reineke's proposed expert testimony
for a litany of reasons. In particular, it emphasizes that Reineke
never reviewed the leases or modifications that are the subject of
this litigation, and that his report is based on no more than one
common question of law or fact derived from the second amended
complaint (Dkt. Nos. 96, 96-1 at 4, 8-9). These arguments are
unavailing.

For example, Antero's argument emphasizes how fact intensive
its royalty calculations are. It notes that its gas is sometimes
unprocessed, sold at different points of sale, and its post-
production expenses are sometimes deducted from royalties,
depending on a variety of circumstances that could vary from month
to month (Dkt. No. 96-1 at 11-19). While these facts are important
to whether this case should be certified as a class action, they do
not compel Reineke's exclusion at this stage of the litigation.
This is especially so because the Court need not rely on Reineke's
testimony when addressing the question of class certification.
Accordingly, the Court denies Antero's motion to exclude Reineke

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

(Dkt. No. 96).[2]

### iii. Donald A. Phend, C.P.A.

Similarly, in attempting to exclude Phend's proposed expert testimony, Antero recycles many of its earlier arguments, making much of the fact that Phend was not asked to opine on the leases and modifications in question, and that his testimony is based not on facts but rather allegations contained in the second amended complaint (Dkt. No. 97-1 at 8-12).

Antero further complains that Phend's expert opinion constitutes inadmissible legal opinion because it merely reiterates the Plaintiffs' theory of the case. Id. at 12. Next, it insists that Phend's opinion "that a common method was used to pay all putative class members is not based on sufficient facts or data." Id. This is so, Antero argues, because its royalty calculations depend on numerous factors, including whether the gas is processed or unprocessed, where it is sold, and a variety of other factors

---

[2] In denying this motion, the Court takes no position on the ultimate admissibility of Reineke's expert testimony.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

that vary from well to well and month to month.[3] Id. at 12-23.

These arguments lack merit. In practical effect, Phend is a damages expert. For him to testify about damages, it matters not whether he has reviewed the leases or has assumed Antero has the legal obligation the Plaintiffs have alleged.[4] Indeed, Phend is an expert in oil and gas industry accounting, not interpreting the language in oil and gas leases. While the Court in due course will address the questions of law vigorously contested by Antero, it

---

[3] Antero also contends that the Court should exclude Phend's testimony because his expert report and his supplemental and rebuttal expert report are not sworn or signed under penalty of perjury, and his supplemental report is improper rebuttal (Dkt. No. 111 at 13). The Court views this argument as waived, however, because Antero failed to raise it in its opening brief. Mew Sporting Goods, LLC v. Johansen, 992 F. Supp. 2d 665, 671 n.2 (N.D. W. Va. 2014). And even if not waived, failure to sign an expert report alone does not warrant exclusion. See, e.g., Ind. Ins. Co. v. Hussey Seating Co., 176 F.R.D. 291, 294 (S.D. Ind. 1997) (finding expert's technical violation of Rule 26(a)(2)(B) by failing to sign expert report was harmless). Moreover, as explained below, because the Court will not consider Phend's testimony for purposes of class certification, it need not consider whether his rebuttal report was improper.

[4] Although Phend does not have the necessary information to calculate damages (which is not surprising given that discovery, thus far, has been limited to class certification), as Antero itself recognizes "an estimate of potential damages is not relevant at the class certification stage" (Dkt. No. 111 at 12).

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

need not consider Phend's proposed expert testimony to rule on the Plaintiffs' motion for class certification. It therefore denies Antero's motion to exclude Phend (Dkt. No. 97).[5]

**B.    Motion to Strike**

Antero also moves to strike certain declarations and exhibits attached to the Plaintiffs' motion for class certification (Dkt. No. 142). It first moves to strike two paragraphs contained in the declaration of attorney George A. Barton ("Barton"), arguing the declaration contains improper legal conclusions and violates the "witness-advocate rule." Id. at 1-3. It further moves to strike the declaration of attorney Taylor P. Foye ("Foye") for the same reasons, and also because it first appeared as an attachment to the Plaintiffs' reply brief. Id. Finally, Antero seeks to strike Exhibit 3 because it contains improper legal conclusions, and Exhibits 7, 8, 22, and 23 because they lack a proper foundation and are unreliable. Id.

Antero's motion to strike fails for two reasons. In the first

---

[5] Again, in denying this motion, the Court takes no position on the ultimate admissibility of Phend's expert testimony.

**MEMORANDUM OPINION AND**
**ORDER DENYING MOTIONS TO EXCLUDE**
**[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE**
**[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION**
**[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS**
**REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

place, it is untimely under the Scheduling Order. <u>Cf.</u> Fed. R. Evid.
103(a)(1)(A) (requiring a party to "<u>timely</u> . . . move[] to strike"
evidence to preserve appellate review (emphasis added)). Indeed,
although the declarations and exhibits Antero seeks to strike were
filed on August 2, 2019 (Dkt. Nos. 100, 101), Antero inexplicably
failed to move to strike them until November 18, 2019 (Dkt. No.
142). <u>Cf.</u> <u>Spivey v. United States</u>, 912 F.2d 80, 85 (4th Cir. 1990)
(concluding motion to strike affidavits was timely under Rule
103(a)(1)(A) when it was filed only nine days after they were
offered into evidence). Notably, this was over a month after the
Court's class certification hearing on October 15, 2019 (Dkt. No.
134). <u>See also</u> <u>id.</u> In the second place, Antero's motion is plainly
beyond the scope of the Court's October 28, 2019 Order, which
directed the parties to submit memoranda of law addressing three
distinct questions, none of which bears a relationship to the
factual or legal basis for the motion to strike (Dkt. No. 141).

And even if timely filed, Antero's motion lacks merit.
Although the Federal Rules of Civil Procedure do not provide
criteria for the admissibility of affidavits or declarations used

14

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

to address questions of class certification, personal knowledge is important to the requisite analysis. See Soutter v. Equifax Info. Servs. LLC, 299 F.R.D. 126, 129-131 (E.D. Va. 2014) (discussing why evidence used at the class certification stage must be based on personal knowledge). Additionally, courts have consistently distinguished between testimony requiring "specialized knowledge" within the purview of Rule 702, and "particularized knowledge that the witness ha[s] by virtue of his position," which is a permissible foundation for lay witness testimony. Henderson v. Corelogic Nat'l Background Data, LLC, No. 3:12CV97, 2016 WL 354751, at *2-3 (E.D. Va. Jan. 27, 2016) (citing United States v. Chapman, 209 F. App'x. 253, 265 (4th Cir. 2006)) (explaining that a witness who does nothing more than review and summarize data is not an expert).

Here, neither attorney declaration falls within the purview of expert testimony. Each merely identify and explain certain information about which Barton and Foye have personal knowledge based on their legal experience and review of the discovery in the case. Such information is relevant to the class certification

15

**MEMORANDUM OPINION AND**
**ORDER DENYING MOTIONS TO EXCLUDE**
**[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE**
**[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION**
**[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS**
**REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

questions of numerosity, commonality, predominance, and adequacy of representation.

Nor does the witness-advocate rule prohibit consideration of these attorney declarations. In <u>Spivey v. United States</u>, 912 F.2d 80, 84 (4th Cir. 1990), the Fourth Circuit upheld a decision to strike an attorney affidavit submitted post trial to resolve a factual dispute. There, our circuit court explained that the factual dispute at issue "should not have been resolved by affidavits in any case, and the submission of a post-trial affidavit to counter defendants' pre-trial motion in limine was clearly not authorized by [Federal] Rule [of Evidence] 43(e)." The court also explained that, "by offering his affidavit on a factual issue, [the attorney] acted as a witness," violating the "elementary [rule] that counsel may not participate both as an advocate and as a witness . . . ." <u>Id.</u>

Here, Barton and Foye's affidavits were not submitted post trial or to resolve a factual dispute, but rather to identify and explain information relevant to the elements of numerosity, commonality, predominance, and adequacy of representation. Nor does

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

the holding in International Woodworkers for America v. Chesapeake
Bay Plywood Corp., 659 F.2d 1259 (4th Cir. 1981), compel a
different conclusion. The issue in that case was not whether to
strike an attorney's declaration, but rather whether the district
court properly disqualified an attorney as a Rule 30(b)(6) witness
on behalf of his client. Id. at 1272-73.

Unlike the testimony of a Rule 30(b)(6) witness, a declaration
is not the testimony of a party. Instead, it "'reflects . . . the
personal knowledge of the declarant.'" Soutter v. Equifax Info.
Servs. LLC, 299 F.R.D. 126, 132 (E.D. Va. 2014) (emphasis omitted)
(citation omitted) (distinguishing between Rule 30(b)(6) testimony
and attorney declarations); see also Lott v. Westinghouse Savannah
River Co., Inc., 200 F.R.D. 539, 548-49 (D.S.C. 2000) (striking
attorney declarations in support of a motion for class
certification as evidence, but considering the declarations as
legal arguments). Thus, under the witness-advocate rule, proper
consideration of the declarations turns on personal knowledge,
which both Barton and Foye have.

This case is distinguishable from Bond v. Antero, 328 F.R.D.

17

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

187 (S.D. Ohio 2018), on which Antero relies. In that case, which also involved class certification based on the language contained in oil and gas leases, the district court held that summary spreadsheets were not sufficient to support a finding of numerosity because they listed all leaseholders in an entire gathering system without identifying the specific type of lease to which each leaseholder was a party. Id. at 194. Here, in stark contrast, Exhibit 3 is limited to leases with gas royalty provisions matching the Mutschelknaus or Matthey Leases that fall within the proposed class definition (Dkt. No. 101-3 at 5). Moreover, the decision in Bond was related to credibility, not admissibility.

Much of Antero's argument turns on its contention that the contested declarations and exhibits are inaccurate or unreliable.[6]

---

[6] In particular, Antero argues that Exhibit 3 does not include all of the relevant lease forms produced by Antero in discovery and does not account for relevant lease modifications (Dkt. No. 142 at 2). It argues that Exhibits 22 and 23 are unreliable because they assume that if one payee signs a lease modification, the entire lease is modified and not simply that individual payee's interest. Id. It further argues that the contested exhibits improperly include a lease to which Rine and Miller are a party that does not form the basis of their breach of contract claim, thirteen leases that Antero inadvertently produced in discovery, and eight duplicated Mutschelknaus leases (Dkt. No. 145 at 7, 8).

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

Because these arguments speak to credibility, not admissibility, the Court may weigh the information in these documents, as well as the entire record and the arguments of both parties, when reviewing the Plaintiffs' motion for class certification.

Finally, Antero concedes that the Court may consider exhibits in support of a reply, whether or not they rebut testimony, if it chooses to do so based on good cause (Dkt. No. 142 at 3).[7] Good cause exists here because the contested exhibits, based on documents prepared by Antero, do not present new information or raise foundational issues,[8] but rather rebut points in the motion for class certification (Dkt. No. 114 at 8). As such, they are relevant and need not be excluded.

C.    **Motion for Class Certification**

Before turning to the merits of the Plaintiffs' motion for

_____

[7] Notably, Antero's argument that Exhibits 22 and 23 should be stricken as untimely because they were attached to the Plaintiffs' reply was first made in Antero's own reply brief (Dkt. No. 145 at 10).

[8] The fact that Antero provided Exhibits 7, 8, 22, and 23 in discovery undermines any argument that the exhibits lack sufficient foundation. Moreover, Antero does not argue that the exhibits are not what they purport to be.

**MEMORANDUM OPINION AND**
**ORDER DENYING MOTIONS TO EXCLUDE**
**[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE**
**[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION**
**[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS**
**REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

class certification, the Court first addresses a threshold question that Antero has raised in numerous motions and memoranda of law throughout this litigation. Antero has urged this Court to reject the Plaintiffs' primary contention that, based on the leases and modifications at issue, it has an obligation under West Virginia law to pay royalties without deducting post-production expenses (Dkt. Nos. 96-1 at 3, 10 at n.3; 110 at 6-8, 7 at n.6; 97-1 at 3, 12 at n.5; 111 at 4-5, 5 n.1; 130 at 1, 4-5; 133 at 2-3, 114 at 12-14, 14 n.10; 136 at 24-30, 59; 143 at 2). Indeed, it has specifically asserted that "the Court must first resolve the implications of <u>Wellman</u> and <u>Tawney</u> for commonality purposes" (Dkt. No. 114 at 13).

Antero now advocates that "this deep dive into the merits is premature" and violates the rule against one-way intervention (Dkt. No. 143 at 1, 5-7). The Court agrees that it need not answer this question at this stage in the litigation. <u>Manuel v. Wells Fargo Bank, Nat. Ass'n</u>, No. 3:14CV238, 2015 WL 4994549, at *1 n.1 (E.D. Va. Aug. 19, 2015) (noting that "class certification does not ask about the merits of plaintiff's claims, but rather determines

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

whether class certification is appropriate"); see also Good, 310 F.R.D. at 284 (noting that "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper" (alteration in original) (citation omitted)).

Antero's argument, however, serves to underscore that this case presents two common questions of law and two common questions of fact, including whether Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (W. Va. 2001), and Estate of Tawney v. Columbia Natural Resources, LLC, 633 S.E.2d 22 (W. Va. 2006), apply to market value and proceed leases alike. And despite Antero's contention otherwise, this question and the others that are discussed in detail below not only are common to the proposed class, but also predominate over the fact-intensive question of damages.

With this perspective in mind, the Court turns to the merits of class certification.

i.    The Proposed Class

The Plaintiffs limit the proposed class to lessors with leases containing language identical to the Mutschelknaus and Matthey

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

Leases, as follows:

> Persons and entities, including their respective successors and assigns, to whom Antero has paid royalties ("Royalties") on Natural Gas, including natural gas liquids, produced by Antero from wells located in West Virginia at any time since January 1, 2009, pursuant to Leases which contain either of the following gas royalty provisions: (a) [Lessee] covenants and agrees "to pay monthly Lessors' proportionate share of the one-eighth (1/8) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm"; or (b) "Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premised producing native gas, as amount equal to one-eighth (1/8) of the gross proceeds received from the sale of the same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly."

> The Class excludes: (1) agencies, departments, or instrumentalities of the United State of America; (2) publicly traded oil and gas exploration companies; (3) any person who is or has been a working interest owner in a well produced by Antero in West Virginia; and (4) Antero.

(Dkt. No. 100-1 at 2-3).

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

## ii.  Applicable Law

The Plaintiffs have the burden of demonstrating that the requirements for class-wide adjudication under Rule 23(b)(3) have been met. Krakauer v. Dish Network, LLC, 925 F.3d 643, 654 (4th Cir 2019) (citing Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)).

Under Rule 23(a), the Plaintiffs must first demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. R. 23(a).

Second, in order to obtain class certification under Rule 23(b)(3), the Plaintiffs must also demonstrate that questions of law or fact common to the class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Finally, the Plaintiffs must demonstrate that the members of the

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

class are readily identifiable. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014).

District courts must perform a "rigorous" analysis to determine whether the class requirements are met. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). This rigorous analysis frequently requires an evaluation of the merits of the underlying claims presented. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2001).

### iii. Rule 23(a) Requirements

The Court next analyzes whether the Plaintiffs have satisfied the four requirements of Rule 23(a).

#### 1. Numerosity

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'" Kay Co., LLC v. EQT Prod. Co., No. 1:13-CV-151, 2017 WL 10436074, at *6 (N.D. W. Va. Sept. 6, 2017) (alteration in original) (quoting Fed. R. Civ. P. 23(a)(1)). "Impracticable does not mean impossible." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Rather than relying on numbers alone, courts should examine the specific facts of the case. Gen. Tel. Co.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

of the Nw., Inc. v. EEOC, 446 US. 318, 330 (1980). Relevant factors include "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." Christman v. Am. Cyanamid Co., 92 F.R.D. 441, 451 (N.D. W. Va. 1981); see also In re Serzone Prods. Liab. Litig., 231 F.R.D. 221, 237 (S.D. W. Va. 2005) (listing same factors).

"No specified number is needed to maintain a class action under [Rule] 23 . . . ." Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967). "When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder." Hewlett v. Premier Salons, Int'l, Inc., 185 F.R.D. 211, 215 (D. Md. 1997). Moreover, the Plaintiffs need not "know precisely the size of the class, rather it is necessary only to show that the class is so large as to make joinder impracticable." McGlothlin v. Connors, 142 F.R.D. 626, 632 (W.D. Va. 1992) (citations omitted).

Here, the Court readily concludes that the Plaintiffs have satisfied their burden of demonstrating that the proposed class is

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

so numerous that "joinder of all members is impracticable." Fed. R.
Civ. P. 23(a)(1). They have identified approximately 700 proposed
class members whose royalty interests are based on language
identical to the Mutschelknaus and Matthey Leases. Should the Court
later exclude leaseholders who were paid only royalties for
unprocessed gas, there undoubtedly will remain class members so
numerous that joinder is impracticable.

### 2. Commonality

Rule 23 next requires that "there are questions of law or fact
common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s
commonality requirement, however, "is subsumed under, or superseded
by, the more stringent Rule 23(b)(3) requirement that questions
common to the class 'predominate over' other questions." Amchem
Prods., Inc. v. Windsor, 521 U.S. 591, 609 (1997). Accordingly, the
Court will consider commonality in its discussion of predominance
in Section II.C.iv.1.

### 3. Typicality

Rule 23 also requires that "the claims . . . of the
representative parties are typical of the claims or defenses of the

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

class." Fed. R. Civ. P. 23(a)(3). In other words, "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (quoting Falcon, 457 U.S. at 156). But "[t]he class representatives and class members need not have suffered identical injuries or damages." In re Serzone Prods. Liab. Litig., 231 F.R.D. at 238 (emphasis added) (citing United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc., 152 F.R.D. 518, 522 (S.D. W. Va. 1994)). "A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" Kay Co., LLC, 2017 WL 10436074, at *9 (quoting Zapata v. IBP, Inc., 167 F.R.D. 147, 160 (D. Kan. 1996)).

Here, the Plaintiffs have satisfied their burden of demonstrating that the representative parties, Romeo, Rine, and Miller, are asserting breach of contract claims typical of the proposed class. Although their claims may differ factually because

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

gas was extracted from different wells, gas was sold at different points of sale, gas was transported to different locations, gas was processed or unprocessed, or Antero took different types of deductions for post-production expenses, the representative Plaintiffs' claims all arise from the same practice or course of conduct and are based on the same legal theory. Indeed, all of the breach of contract claims are based on the theory that Antero has been unlawfully deducting post-production expenses from the Plaintiffs' royalty payments. And although the Plaintiffs' damages may vary based on the amount and frequency of Antero's allegedly unlawful deductions, "[t]he class representatives and class members need not have suffered _identical_ injuries or damages." In re Serzone Prods. Liab. Litig., 231 F.R.D. at 238 (citing Phoenix Assocs., Inc., 152 F.R.D. at 522).

### 4. Adequacy of Representation

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This determination involves a two-pronged inquiry: "(1) whether class counsel are qualified, experienced, and generally

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." Hewlett, 185 F.R.D. at 218 (citing Buford v. H & R Block, Inc., 168 F.R.D. 340, 352 (S.D. Ga. 1996)). The latter inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Windsor, 521 U.S. at 625.

Here, the Plaintiffs have satisfied their burden of demonstrating adequacy for two reasons. First, because Antero did not challenge the competency of Plaintiffs' counsel, the Court presumes they are "competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." Hewlett, 185 F.R.D. at 218 (citing Zapata, 167 F.R.D. at 161).

Second, the interests of the proposed class representatives, Romeo, Rine, and Miller, do not conflict with those of the proposed class members. Despite Antero's claim that Rine and Miller have conflicting remedial interests because they have environmental concerns and "are not interested in maximizing royalties" (Dkt. No.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

114 at 23 n.23), the proposed class representatives seek the same type of relief based on the same theory of the case. They seek compensatory damages, plus interest, for their breach of contract claims (Dkt. No. 31 at 13-14). Indeed, they seek no environmental relief. Id. Accordingly, the proposed class representatives' claims are "sufficiently interrelated to . . . ensure fair and adequate representation." Hewlett, 185 F.R.D. at 218 (citing Buford, 168 F.R.D. at 352).

### iv.  Rule 23(b) Requirements

The Court turns now to whether the Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### 1.  Predominance

A class action can be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

by representation.'" Lienhart, 255 F.3d at 147 (quoting Amchem Prods., Inc., 521 U.S. at 623). Thus it "focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 677 (D. Md. 2013) (citing Cuthie v. Fleet Reserve Ass'n, 743 F. Supp. 2d 486, 499 (D. Md. 2010)).

"Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." Id. (citing Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 429 (4th Cir. 2003)). Critically, "[c]ommon liability issues may still predominate even when individualized inquiry is required in other areas." Good, 310 F.R.D. at 296 (citing Gunnells, 348 F.3d at 429). "At bottom, the inquiry requires a district court to balance common questions among class members with any dissimilarities between class members." Id. (citing Gunnells, 348 F.3d at 427-30).

Conducting the requisite balancing test here, the Court readily concludes that the common questions of law and fact presented in this case far outweigh the dissimilarities in damages among class members that likely will require individualized

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

inquiries. Indeed, this case presents four common questions of law
and fact:

> (1) Do <u>Wellman</u> and <u>Tawney</u> apply to both market value
> and proceed leases?

> (2) If so, do the leases at issue, as modified by any
> subsequent modifications (if any), have the
> specific language required by <u>Wellman</u> and <u>Tawney</u>
> that would allow Antero to deduct post-production
> expenses from the Plaintiffs' royalty payments?

> (3) If not, did Antero unlawfully deduct post-
> production expenses from the Plaintiffs' royalty
> payments?

> (4) If so, how did Antero calculate these deductions?

Of these common questions, the first three are strictly
limited to liability. If the answer to the first question is no, as
Antero has repeatedly insisted, it may not be liable for unlawfully
deducting post-production expenses. But if the answer is yes, the
next common question is whether the leases at issue include the
specific language required by <u>Wellman</u> and <u>Tawney</u> that would allow
Antero to lawfully deduct post-production expenses from the

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
**[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

Plaintiffs' royalties. If they do, no liability would follow. But if they do not, the next common question is whether Antero took deductions; if it did not, no liability would follow. But if Antero took deductions impermissibly, the next question is how did it calculate these deductions, and what damages has each class member suffered?

Antero has effectively conceded that it uses the same method to calculate its deductions for post-production expenses: "Antero states that the method for calculating the value of the gas at the well and the net value at the factory of the manufactured products, includings NGLs, is the same for [the] Plaintiffs and all Mutschelknaus/Matthey Putative Class Members . . . ." (Dkt. No. 101-16 at 7). Indeed, it describes the "method," not methods, and states that it is "the same" for the named plaintiffs and putative class members. Id. Antero's subsequent qualification demonstrates only that, while it uses the same method to calculate deductions for post-production expenses, "the calculation itself is individualized and does not yield the same results for each Plaintiff or Mutschelknaus/Matthey Putative Class Member because there are a number of variables integral to the methodology that

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

make each calculation unique." Id. at 7-8. In other words, although
Antero employs the same method to calculate its deductions, that
method produces different results (i.e., damages).

But "[c]ourts in every circuit have uniformly held that the
[Rule] 23(b)(3) predominance requirement is satisfied despite the
need to make individualized damage determinations . . . ." Kay Co.,
LLC, 2017 WL 10436074, at *11 (citations omitted). And conducting
the necessary balancing test, it is clear that "[t]he common
questions discussed above predominate" and answering these
questions "will largely dispose of this litigation." Id. at 12.
Tellingly, "[n]umerous courts in [this and] other jurisdictions
have certified class actions involving claims arising from natural
gas leases, the royalties paid under such leases, and/or the
deductions taken from such royalty payments, among other related
issues." Id. (compiling cases).

Although Antero contends different modifications affect the
leases at issue, the Court need only address the specific lease
language if it answers the first common question in the
affirmative. If there are various lease modifications, these leases
can be divided and evaluated in subclasses. See id. at 13 (noting

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

that, if necessary, the court can evaluate different leases in subclasses). If the Court proceeds to the second common question, the leases, even as modified, "[e]ither . . . satisf[y] the <u>Tawney</u> standard or [they] do[] not," which is strictly a question of law. <u>Id.</u> In sum, the four common questions of law and fact listed above predominate over the uncommon question of damages suffered by the Plaintiffs.

### 2. Superiority

Rule 23(b)(3) also requires that the proposed class action be superior to other methods of adjudication so that the class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" <u>Windsor</u>, 521 U.S. at 615 (quotation omitted). When determining whether a class action is superior under Rule 23(b)(3), courts consider four relevant guidelines:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

> (C) the desirability or undesirability of
> concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the likely difficulties in managing a
> class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); see also Hewlett, 185 F.R.D. at
220 (noting that these subsections are "guidelines").

Here, Antero contends that the Plaintiffs have not established
superiority because (1) they have not demonstrated that anyone else
wants to join this class action; (2) there are no barriers to
individual litigation; (3) other plaintiffs are already pursuing
the same breach of contract claims involving the same leases; (4)
this is a local matter governed by West Virginia substantive law;
and (5) a class action would be unmanageable (Dkt. No. 114 at 24-
25). Each claim is unavailing.

First, Rule 23 does not require the Plaintiffs to
affirmatively show that proposed class members want to join the
class action. See Fed. R. Civ. P. 23. Nor does Rule 23 require
barriers to individual litigation. Id. Rather, it requires only
that the class be "so numerous that joinder of all members is
impracticable." Fed. R. Civ. P. 23(a)(1). As discussed earlier,

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

that requirement is easily satisfied here. See supra Section II.C.iii.1.

Second, "the interest in personal control of the litigation is minimal in this context." Soutter v. Equifax Info. Servs., LLC, 307 F.R.D. 183, 218 (E.D. Va. Apr. 15, 2015) (citation omitted). This is particularly so where, as here, the alleged injuries stem from the same course of conduct and raise the same legal and factual questions. See White v. Imperial Adjustment Corp., No. 99-CV-3804, 2002 WL 1809084, at *14 (E.D. La. Aug. 6, 2002) ("Where, as here, the focus of the proceeding will be the alleged course of conduct of the defendants in conscious disregard of the consumers' rights, the purpose of which is to determine whether statutory and punitive damages are due, the interest in personally controlling the litigation is small."). Moreover, the fact that only 11 of approximately 700 class members have already pursued their own breach of contract claims against Antero supports the conclusion that there is little interest in individual litigation. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425 (4th Cir. 2003) (noting that there was no great deal of interest in individual litigation when, of 1400 potential class members, "there

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

was a 'dearth of individual cases filed until now'"). In addition, "[t]o the extent any individual does wish to retain control, . . . the opt-out mechanism will be available." Soutter, 307 F.R.D. at 218.

Third, although 11 proposed class members have already elected to individually pursue their breach of contract claims against Antero, this fact, alone, does not weigh against class certification when the proposed class includes approximately 700 members. See Fed. R. Civ. P. 23(b)(3)(B) (requiring court to consider "the extent and nature of any litigation concerning the controversy already begun by or against class members"). Indeed, these cases have already been consolidated for discovery purposes because they "involve common questions of law and fact" (Civil Action No. 1:18cv30, Dkt. No. 32 at 1).

Fourth, allowing the remaining members of the proposed class to pursue a class action "serves the interest of judicial economy." Thomas v. FTS USA, LLC, 312 F.R.D. 407, 426 (E.D. Va. Jan. 7, 2016). "It saves time and resources to resolve the issues presented on a class-wide basis rather than to" resolve several hundred motions for summary judgment "on the same issues." Id. In other

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

words, there is a strong desirability to concentrate the litigation of these claims in this Court for "consolidated resolution of the common issues." See Fed. R. Civ. P. 23(b)(3)(C) (requiring courts to consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"); see also Soutter, 307 F.R.D. at 218 ("[E]ven if just a fraction of the class members were to bring individual suits, the adjudication of the common issues in a single proceeding would be more efficient than the separate adjudication of individual claims." (citation omitted)).

Finally, "the similarity of factual and legal issues indicates that a class action would be manageable . . . ." See Fed. R. Civ. P. 23(b)(3)(D) (requiring courts to consider "the likely difficulties in managing a class action"). Tellingly, Antero does not explain why this class action would be unmanageable under the circumstances (Dkt. No. 114 at 25). Nor could it. As previously discussed, this case presents four common questions of law and fact that predominate over the individualized question of damages. See supra Section II.C.iv.1. Answering these common questions in one class action will not only be manageable, but also more efficient.

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

In sum, the Plaintiffs proposed class action is far superior to individual litigation.

### 3. Ascertainability

Although not specifically required, the Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" <u>Adair</u>, 764 F.3d at 358 (citations omitted). This implied rule has regularly been described "as an 'ascertainability' requirement." <u>Id.</u> (citations omitted). "However phrased, the requirement is the same. A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." <u>Id.</u> (citations omitted). "The plaintiffs need not be able to identify every class member at the time of certification." <u>Id.</u> "But if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." <u>Id.</u> (cleaned up) (citations omitted).

Here, the Plaintiffs' proposed class is readily identifiable, and Antero's claims otherwise lack merit. To start, the proposed class is limited to "[p]ersons and entities, including their

40

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

respective successors and assigns, to whom Antero has paid royalties . . . on Natural Gas . . . ." (Dkt. No. 100-1 at 2-3 (emphasis added)). Although Antero claims that its "summary royalty reports" are limited to current payees and that it cannot identify former royalty owners "without resort[ing] to public title records," these claims are simply belied by the evidence (Dkt. No. 114 at 7).

Indeed, Antero's Rule 30(b)(6) witness, Alvyn Schopp, confirmed during his deposition that its summary royalty reports are a summary of all payments from 2010 to 2018 (Dkt. No. 101-8 at 22). He also confirmed that the summary royalty reports identified payees by payee number, and that Antero's accounting system maintains information about royalty calculations and payments. Id. at 20-21. Moreover, Phil Yoo, an Antero employee in charge of its accounting department, confirmed that Antero maintains electronic information of all royalty payments it has made to payees since 2010, even though that information spans two different accounting systems: Excalibur (2010 to 2013 or 2014) and Enertia (2013 or 2014 to present) (Dkt. No. 119-5 at 4). In other words, although Antero has not yet identified the potential class members by name, it

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

maintains accounting information that makes them readily

identifiable, thereby satisfying Rule 23's implicit requirement.

### 4.   Definition and Appointments

For the reasons discussed, the Court will certify the

following class:

> Persons and entities, including their
> respective successors and assigns, to whom
> Antero has paid royalties ("Royalties") on
> Natural Gas, including natural gas liquids,
> produced by Antero from wells located in West
> Virginia at any time since January 1, 2009,
> pursuant to Leases which contain either of the
> following gas royalty provisions: (a) [Lessee]
> covenants and agrees "to pay monthly Lessors'
> proportionate share of the one-eighth (1/8) of
> the value at the well of the gas from each and
> every gas well drilled on said premises, the
> product from which is marketed and used off
> the premises, said gas to be measured at a
> meter set on the farm"; or (b) "Lessee
> covenants and agrees to pay Lessor as royalty
> for the native gas from each and every well
> drilled on said premised producing native gas,
> as amount equal to one-eighth (1/8) of the
> gross proceeds received from the sale of the
> same at the prevailing price for gas sold at
> the well, for all native gas saved and
> marketed from the said premises, payable
> quarterly."
>
> The Class excludes: (1) agencies, departments,
> or instrumentalities of the United State of
> America; (2) publicly traded oil and gas
> exploration companies; (3) any person who is

**MEMORANDUM OPINION AND**
**ORDER DENYING MOTIONS TO EXCLUDE**
**[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE**
**[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION**
**[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS**
**REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

> or has been a working interest owner in a well
> produced by Antero in West Virginia; and
> (4) Antero.

(Dkt. No. 100-1 at 2-3). The Court further excludes from this class any royalty interest owner who has never had their royalty payments reduced by Antero for their related share of post-production expenses. The Court also excludes any person involved in related litigation, pursuing the same claim, against the same defendant, based on the same facts and circumstances.

Next, the Court appoints Romeo, Rine, and Miller to serve as class representatives because their claims are typical of the class as required by Rule 23(a)(3), and they will fairly and adequately protect the interests of the class as required by Rule 23(a)(4). And considering the requirements of Rule 23(g)(1)(A), the Court concludes that Larry Lee Javins, II, George A. Barton, and Howard M. Persinger, III are knowledgeable and experienced in class action litigation, making them well qualified to represent the Plaintiffs (Dkt. Nos. 101-3, 101-17, 101-18). Accordingly, the Court appoints Larry Lee Javins, II, George A. Barton, and Howard M. Persinger, III as class counsel.

MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE

### III. CONCLUSION

For the reasons discussed, the Court:

- **DENIES** Antero's motions to exclude (Dkt. Nos. 96, 97);

- **DENIES** Antero's motion to strike (Dkt. No. 142);

- **GRANTS** the Plaintiffs' motion for class certification (Dkt. No. 100);

- **CERTIFIES** this case as a class action pursuant to Rule 23(b)(3);

- **APPOINTS** Romeo, Rine, and Miller as class representatives;

- **APPOINTS** Larry Lee Javins, II, George A. Barton, and Howard M. Persinger, III as class counsel pursuant to Rule 23(g);

- **ORDERS** class counsel to submit a proposed Notice of Certification to the defined class to be mailed to members of the class in accordance with Rule 23(c)(2)(B) within 30 days of the date of this Order;

- **SCHEDULES** a status conference by telephone for **Tuesday, April 21, 2020, at 12:15 P.M.**, to further schedule the case; and

- **DIRECTS** lead counsel for the Plaintiffs to arrange the conference call and provide dial-in information to all parties

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO EXCLUDE
[DKT. NOS. 96, 97], DENYING MOTION TO STRIKE
[DKT. NO. 142], GRANTING MOTION FOR CLASS CERTIFICATION
[DKT. NO. 100], CERTIFYING THE CLASS, APPOINTING CLASS
REPRESENTATIVES AND COUNSEL, AND SCHEDULING A STATUS CONFERENCE**

and the Court, by email to candace_levitsky@wvnd.uscourts.gov,

by **Friday, April 17, 2020.**

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this

Memorandum Opinion and Order to counsel of record.

DATED: March 23, 2020.

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE