# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

| | |
|---|---|
| **JACKLIN ROMEO, SUSAN S. RINE, and DEBRA SNYDER MILLER,** individually and on behalf of all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **ANTERO RESOURCES CORPORATION,** <br><br> **Defendant.** | **Civil Action No. 1:17-CV-88** <br> **(JUDGE KEELEY)** |

## MEMORANDUM OPINION AND ORDER GRANTING ANTERO RESOURCES CORPORATION'S MOTION FOR PROTECTIVE ORDER [ECF NO. 246]

This matter comes before the undersigned pursuant to a referral order [ECF No. 247] entered by Honorable Senior United States District Judge Irene M. Keeley on August 27, 2020. Per this referral order, District Judge Keeley referred Defendant Antero Resources Corporation's ("Antero") pending Motion for Protective Order [ECF No. 246] for a hearing and disposition. Said motion was filed on August 27, 2020. Plaintiffs filed a Response [ECF No. 248] to Defendant's motion on August 28, 2020. The undersigned held a Motion Hearing [ECF No. 257] in this matter on August 31, 2020.

For the reasons stated herein and on the record, Defendant Antero Resources Corporation's Motion for Protective Order [ECF No. 246] is hereby **GRANTED**.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The motion before the Court concerns the deposition of K. Phil Yoo, Antero's now-retired Vice President – Accounting, Chief Accounting Officer, and Corporate Controller and whether Antero's the attorney-client privilege protects communications between Antero's counsel and Mr. Yoo made during the period of the corporate officer's retirement.

Plaintiffs first noticed Mr. Yoo's deposition on May 31, 2019 [ECF No. 92] and took his deposition on June 6, 2019, while Mr. Yoo still was employed by Antero. [ECF No. 246 at 2]. Subsequently, on May 15, 2020, Mr. Yoo retired. Id. Then, on August 6, 2020, Plaintiffs noticed Mr. Yoo's second deposition [ECF No. 237] as a fact witness, with Mr. Yoo being served with notice on August 17, 2020. [ECF No. 239]. Mr. Yoo's deposition, conducted remotely, followed on August 25, 2020, lasting approximately two hours. [ECF No. 246 at 2]. From argument heard during the Court's hearing on the subject motion [ECF No. 257], it appears that the subject of Mr. Yoo's deposition on August 25, 2020 concerned, principally, a spreadsheet that he had prepared prior to his retirement from Antero. Further, from said argument, it appears that Antero produced the spreadsheet after Mr. Yoo's retirement.

During the course of the subject deposition, Plaintiffs' counsel inquired of Mr. Yoo what he had done to prepare for the deposition. [ECF No. 246 at 2]. Mr. Yoo responded that he had spoken with Antero's counsel, W. Henry Lawrence. Id. Plaintiffs' counsel inquired of Mr. Yoo what he had discussed with Mr. Lawrence, at which point Mr. Lawrence objected on the grounds of attorney-client privilege and instructed Mr. Yoo not to answer. Id. It appears that the parties conferred as to the matter, were unable to resolve it, and Plaintiffs sought resolution from the Court.

Plaintiffs point out that Mr. Yoo did not have his own counsel for or during the deposition. [ECF No. 248 at 1]. They also emphasize that Mr. Lawrence contacted Mr. Yoo, not the other way around, that Mr. Yoo didn't affirmatively seek Mr. Lawrence's legal advice, and that Antero did not intend such communication after Mr. Yoo's retirement to be privileged. [ECF No. 248 at 2].

From argument heard during the Court's hearing on the subject motion [ECF No. 257], Plaintiffs acknowledge that the attorney-client privilege protects Antero's counsel's communications with Mr. Yoo which occurred during the time of Mr. Yoo's employment with Antero. Further, it does not appear that Plaintiffs sought or intend to seek such information. Rather, the narrow issue is Plaintiffs' attempt to obtain information concerning Mr. Yoo's communications with Antero's counsel during the time of Mr. Yoo's retirement only.[1]

## II. ANALYSIS

The question before the Court is whether the attorney-client privilege protects communications between a former corporate officer of Antero and Antero's counsel which occurred since the time of the former corporate officer's retirement from Antero.[2]

It is well-established that litigants may seek relevant discovery concerning nonprivileged matters. Fed. R. Civ. P. 26(b). Further, when necessary to preserve a privilege, a deponent may be instructed to not answer a question during a deposition. Fed. R. Civ. P. 30(c)(2). Also, in discovery matters, a party may seek relief from a Court in the form of a protective order, which a Court may issue. Fed. R. Civ. P. 26(c).

---

[1] During argument before the Court on this issue [ECF No. 257], Mr. Lawrence represented that his communications with Mr. Yoo since the time of Mr. Yoo's retirement have been neither numerous nor substantive.

[2] In its motion [ECF No. 246], Antero also asserts, secondarily, the application of the work-product doctrine to shield Mr. Yoo from Plaintiffs' inquiry as to Mr. Yoo's communication with Mr. Lawrence. However, as the Court finds that the attorney-client privilege operates to prohibit Plaintiffs inquiry as to communication between Mr. Yoo and Mr. Lawrence, it need not reach the question of applicability of the work-product doctrine and declines to address it at this time.

This action is pending in the Northern District of West Virginia on the basis of diversity jurisdiction. As such, West Virginia law controls as to applicability of the attorney-client privilege. To this end, West Virginia law is well-established that "[t]he burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syl. Pt. 4, State ex rel. U.S. Fid. & Guar. Co. v. Canady, 194 W. Va. 431, 433, 460 S.E.2d 677, 679 (1995). Moreover, under West Virginia law, for the attorney-client privilege to apply, the longstanding principle is that "three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential." Syl. Pt. 2, State v. Burton, 163 W. Va. 40, 40–41, 254 S.E.2d 129, 132 (1979).

While West Virginia law as to the application of the attorney-client privilege to a corporate client appears to be limited, a seminal case addressing the question is Upjohn Co. v. United States, 449 U.S. 383 (1981). In that case, the Court highlighted not just the sacrosanct nature of the attorney-client privilege, but also its importance in the context of an attorney communicating with individuals associated with a corporation. Id. at 390-391. Indeed, the Court noted that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law" so as to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. at 389. The Court explained that for an attorney to formulate sound and informed advice to a corporate client, the attorney-client privilege should not be unduly narrowed as to applicability to communications with corporate employees. Id. at 391-392.

While the Upjohn Court did not reach the question of communications with former corporate employees, the Fourth Circuit has. Specifically, in adjudicating a West Virginia dispute on the issue, the Fourth Circuit held that "the analysis applied by the Supreme Court in *Upjohn* to determine which employees fall within the scope of the privilege applies equally to former employees." In re Allen, 106 F.3d 582, 606 (4th Cir. 1997).

Plaintiffs argue that these cases are not instructive here because In re Allen states only that the Upjohn *analysis* applies, not that it wholly precludes discovery of the type Plaintiffs seek. [ECF No. 248 at 5]. Further, according to Plaintiffs, the concern about employee communication expressed by the Supreme Court as to the Upjohn facts is not present in the instant case. Id. However, the Court is unpersuaded by this argument. As Antero rightly points out, there is unquestionably an attorney-client relationship between Antero itself and its counsel, based on the Burton analysis set forth above. [ECF No. 246]. Plaintiffs do not dispute this. Moreover, under the facts at hand, the attorney-client privilege applies with respect to Mr. Yoo because he was a corporate officer, and had information pertaining to Antero's counsel's investigation and analysis of claims and defenses in this matter. Moreover, it was at Antero's direction that Mr. Lawrence communicated with Mr. Yoo. Finally, per representations of counsel on both sides during the Court's hearing on the subject motion [ECF No. 257], it appears that during Plaintiffs' deposition of Mr. Yoo on August 25, 2020, the questioning related only to Mr. Yoo's role and employment at Antero. Thus, Plaintiffs' attempt to circumvent the attorney-client privilege must fail.

## III. ORDER AND CONCLUSION

For the foregoing reasons, Defendant's Motion for Protective Order [ECF No. 246] is hereby **GRANTED**. It is so **ORDERED**. Accordingly, it is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure Rule 26(c), Plaintiffs are prevented from further questioning of Mr. Yoo regarding his pre-deposition communications with Antero's counsel.

The Court directs the Clerk of the Court to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**Dated: September 4, 2020.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE