IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKLIN ROMEO,
Individually and on behalf
of others similarly situated;
SUSAN S. RINE,
Individually and on behalf
of others similarly situated;
DEBRA SNYDER MILLER,
Individually and on behalf
of others similarly situated,

        Plaintiffs,

v.                            CIVIL ACTION NO. 1:17CV88
                                    (Judge Keeley)

ANTERO RESOURCES CORPORATION,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS
TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

Pending before the Court is the motion of the Plaintiffs Jacklin Romeo ("Romeo"), Susan Rine ("Rine"), and Debra Miller ("Miller") (collectively, "the Plaintiffs"), to exclude the testimony of Kris Terry ("Terry"), who has been disclosed as an expert witness by the Defendant, Antero Resources Corporation ("Antero") (Dkt. No. 296). For the reasons that follow, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion.

## I. BACKGROUND

The Plaintiffs own oil and natural gas interests in leases assigned to Antero. On May 15, 2017, they filed a class action complaint asserting a single breach of contract claim related to

**ROMEO ET AL V. ANTERO**                                          **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

Antero's alleged failure to pay them a full 1/8th royalty payment for their natural gas interests. Gas produced under the leases at issue (the "Class Leases"), consists of "wet gas" (saturated with liquid hydrocarbons and water) that must be treated and processed to obtain marketable "residue gas." Likewise, this gas contains valuable liquid hydrocarbon components (ethane, butane, isobutane, propane, and natural gas) ("NGLs") that must be extracted and fractionated prior to sale.

The Plaintiffs contend that, because no royalty provision in the leases at issue expressly permits such deductions, West Virginia law imposes a duty on Antero to calculate royalties based on the price it receives from third parties for the residue gas and NGLs, without deductions. The Plaintiffs assert that, despite this duty, Antero has deducted various post-production costs for residue gas and NGLs from their royalty payments.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. An expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "In assessing a proffered expert's qualifications, the district court must consider the proposed expert's full range of

**ROMEO ET AL V. ANTERO**                                              **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

---

experience and training, not just his professional qualifications."
Good v. Am. Water Works Co., Inc., 310 F.R.D. 274, 282 (S.D.W. Va. 2015) (cleaned up) (citations omitted). Once qualified, an expert's testimony is admissible if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the gatekeeper in the case, a court should admit the proposed expert testimony only if it is reliable and relevant, so that it helps the jury in understanding the issues or evidence. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001); Daubert, 509 U.S. at 592 n. 10.

"While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on

**ROMEO ET AL V. ANTERO**                                    **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." <u>Sun Yung Lee v. Clarendon</u>, 453 F. App'x 270, 278 (4th Cir. 2011) (citing <u>Anderson v. Suiters</u>, 499 F.3d 1228, 1237 (10th Cir. 2007).

### III. DISCUSSION

**A. Terry's Proposed Testimony**

Kris Terry, Antero's proposed expert, is the President of Kris Terry & Associates, Inc., a consulting firm that advises businesses in the oil and gas industry. Antero retained her to offer relevant opinions in this case on the history and operations of the oil and gas industry. Based on her "Expert Merits Report" (Dkt. No. 296-1), she proposes to testify on the usage and meaning of industry terms, industry customs and practices, and how the industry's terms, customs, and practices apply to Antero's calculation of royalty payments pursuant to the provisions of the Class Leases. She also intends to opine on "industry contractual and property arrangements for leasing minerals, as well as the production, transportation, processing, and marketing of natural gas and NGLs." Finally, she will offer her opinion on whether Antero breached the terms of the Plaintiffs' leases.

Terry's report first provides a general description of the

4

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

physical flow of natural gas, the historical development of the industry, and the process of selling natural gas and NGLs. It then specifically examines the Class Leases, the class definition, and the various provisions in the oil and gas leases that impact Antero's royalty calculations. It also discusses how Antero's marketing strategy differs for each well depending upon its location, the gas quality, and the availability of marketing outlets.

In Terry's opinion, the individual valuations required by this marketing strategy preclude any uniform answers to the common questions the Court has identified.[1] She also criticizes the opinions offered by the Plaintiffs' expert witness, Donald Phend

---

[1]

There are four common questions of law and fact that pertain to the Class Members. These include:

(1) Do Wellman and Tawney apply to both market value and proceeds leases?
(2) If so, do the leases at issue, as modified by any subsequent modifications (if any), have the specific language required by Wellman and Tawney that would allow Antero to deduct post-production expenses from Plaintiffs' royalty payments.
(3) If not, did Antero unlawfully deduct post-production expenses from the Plaintiffs' royalty payments?
(4) If so, how did Antero calculate these deductions?

(Dkt. No. 152 at 32).

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

("Phend"). Terry's report concludes with the following opinions,

offered to a reasonable degree of certainty:

1.  Whether Antero breached a Class Lease cannot be
    determined on a class-wide basis because the Class
    Leases contain modifications that impose different
    obligations upon Antero at different times;

2.  Antero's methodology for calculating royalties on a
    lease by lease, month by month, well by well basis
    exceeds the best practices in the industry and
    results in royalty payments that are greater than
    required by the Class Leases and more generous than
    the industry standard;

3.  Phend has not calculated class-wide damages using
    relevant information or in a reliable manner under
    industry standards;

4.  Whether the Plaintiffs or other Class Members have
    enforceable leases cannot be determined on a class-
    wide basis because of the various title issues
    arising under each lease individually; and

5.  Whether the Plaintiffs and Class Members complied
    with their lease obligations cannot be determined
    on a class-wide basis because the provisions
    outlining the Class Members' obligations vary among
    the Class Leases.

**B.  The Plaintiffs' Motion to Exclude**

The Plaintiffs seek to exclude all of Terry's proposed

opinions for three reasons. First, they contend that her opinions

regarding "the extent of Antero's royalty payment obligations under

the applicable Class royalty provisions" should be excluded because

they constitute inadmissible contract interpretations that conflict

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

with West Virginia law. See Energy Dev. Corp. v. Moss, 214 W. Va.

577 S.E.3d 135, 143 (2003). Second, they argue that Terry's

opinions regarding the propriety of class certification conflict

with the Court's prior Order of March 23, 2020, which preliminarily

granted class certification (Dkt. No. 152). Finally, they argue

that Terry is not qualified to criticize Phend's calculation of the

Class Members' damages, and, even if qualified, her opinions lack

a proper foundation and are erroneous as a matter of law. The Court

will address each of these arguments in turn.

**C.   Terry's Proposed Testimony Regarding Antero's Royalty Payment
      Obligations**

The Plaintiffs seek to exclude Terry's opinions regarding the

extent of Antero's obligations under the royalty provisions of the

Class Leases. Specifically, they argue that her opinion, that

Antero is not obligated to pay royalties based on the prices it

receives on its sale of residue gas and NGLs at the point of sale,

violates the holdings in Tawney v. Columbia Natural Resources, 219

W. Va. 266 (2004); and Wellman v. Energy Resources, Inc., 210 W.

Va. 200 (2001) (Dkt. No. 296 at 9-13).

According to Antero, by offering opinions regarding its

obligations under the royalty provisions in the Class Leases, Terry

is not attempting to interpret Antero's legal obligations under

**ROMEO ET AL V. ANTERO**                                      **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

those leases but rather to aid the jury's understanding of natural gas marketing, and of terms and conditions that are unique to the oil and gas industry (Dkt. No. 304-2 at 5-15).

    **i.**   **Class Lease Royalty Provisions (Paragraphs 28 and 29 of Terry's Expert Report)**

According to Terry, the royalty provisions in the Class Leases allow Antero to pay royalties based on the "wellhead value" of the natural gas. The Plaintiffs argue that this interpretation conflicts with the Court's preliminary determination that _Wellman_ and _Tawney_ apply to the Class Leases. They contend that, pursuant to the holding in _Tawney_, under the relevant language in the Class Leases Antero must bear all costs up to the "point of sale" (Dkt. No. 296-1 at 9-10).

Antero urges the Court to admit Terry's testimony about the royalty provisions in the Class Leases because she defines industry terms of art that a jury needs to understand (Dkt. No. 304-2 at 7-8). Antero also reiterates its contention that the holdings of _Wellman_ and _Tawney_ do not apply to the royalty provisions in the Class Leases, and that, until the Court does determine whether _Wellman_ and _Tawney_ are applicable, Terry's opinions regarding its obligations under the leases remain viable. Antero further argues that, even if the holdings in _Wellman_ and _Tawney_ do control the

8

ROMEO ET AL V. ANTERO                                    1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

outcome of this case, Terry's opinions are admissible because they
will aid the trier of fact in "understanding natural gas marketing
and complex industry terms." Id. at 8-9.

Under West Virginia law, "contract law principles apply
equally to the interpretation of leases." Energy Dev. Corp, 214 W.
Va. at 591; K&D Holdings, LLC v. Equitrans, L.P., 812 F.3d 333, 339
(4th Cir. 2015). Whether a contract is ambiguous is a question of
law reserved to the Court. Syl. Pt. 1, Berkeley Cty. Pub. Serv.
Dist. v. Vitro Corp. of Am., 152 W. Va. 252 (1968). While ambiguous
contracts must be construed before they may be applied, contracts
that are plain and unambiguous are not subject to judicial
construction and "will be applied and enforced according to the
[parties'] intent." Syl. Pt. 3, Tawney, (quoting Syl. Point 1,
Cotiga Development Co. v. United Fuel Gas Co., 147 W.Va. 484
(1962)). Therefore, it is generally improper for the Court to rely
on expert testimony interpreting the terms of an unambiguous
contract. Forest Creek Assoc. v. McLean Savs. and Loan Assoc., 831
F.2d 1238, 1242 (4th Cir. 1987).

Here, the interpretation of the royalty provisions in the
Class Leases is a question of law and Terry's opinions regarding
Antero's obligations to pay royalties pursuant to these provisions

9

ROMEO ET AL V. ANTERO                                    1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

are inadmissible. Syl. Point 1, <u>Cotiga</u>, 147 W.Va. 484. As those royalty provisions are not ambiguous, there is no need for Terry to opine on the parties' obligations under those provisions. The Court therefore excludes Terry's opinions regarding Antero's obligations to pay royalties solely on the wellhead value of the Class Members' natural gas.

Nevertheless, to the extent Terry intends to explain terms of art in the oil and gas industry, and to describe certain customs and usage within that industry, such testimony will aid the jury's understanding of a complex industry and is admissible. Although the Plaintiffs argue that several of Terry's opinions are contrary to the holdings in <u>Wellman</u> and <u>Tawney</u>, general testimony about operational aspects of the oil and gas industry should not tread on the ultimate legal question of Antero's duties under the Class Leases. <u>Clarendon</u>, 453 F. App'x at 278 (citing <u>Anderson</u>, 499 F.3d at 1237.

This ruling is not limited solely to Paragraphs 28 and 29 of Terry's expert report, but applies equally to any other attempt by Terry to offer her opinion on the legal impact of <u>Wellman</u> and <u>Tawney</u> on Antero's obligations under the royalty provisions of the Class Leases.

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

### ii. Market Enhancement Clause Modifications (Paragraphs 26 and 74 of Terry's Expert Report)

The Plaintiffs seek to exclude the following opinions that Terry offers on the market enhancement modification clause found in two of the Class Leases: (1) that gas may be a marketable product at the wellhead; (2) that Antero is expressly permitted to deduct post-production costs; and (3) that Antero may deduct the cost of transporting the already marketable product to the point of sale (Dkt. No. 296-1 at 10). According to the Plaintiffs, such testimony encompasses inadmissible contract interpretations in conflict with the holding in <u>Tawney</u>. <u>Id.</u> For the same reason, they contend Terry's opinion, that some Class Members have modified their leases to specifically permit the deduction of post-production costs in limited circumstances, is inadmissible. <u>Id.</u>

Antero asserts that, because Terry's opinions describe the purpose of market enhancement clauses and the "various marketing circumstances that otherwise affect the market enhancement clauses and transportation costs at issue in this action," her opinions will aid the jury's understanding of a complex industry (Dkt. No. 304-2 at 10). It further asserts that Terry's extensive knowledge of present-day marketing conditions would aid the jury because such

ROMEO ET AL V. ANTERO                                              1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

considerations were not addressed in <u>Wellman</u> or <u>Tawney</u>, which considered only the costs of delivering natural gas to one particular point of sale in the stream of commerce.

Terry's opinions in this area undoubtedly would aid the jury in understanding what a market enhancement clause is, as well as how such a clause operates in the industry. The Court therefore will allow her to explain how natural gas is marketed, and to discuss the general operation of market enhancement clauses in the industry. But opinions about whether such a clause modifies the Class Leases so as to permit Antero to deduct post-production costs constitute inadmissible legal conclusions. Therefore, Terry may not opine about the legal effect, if any, of the market enhancement clause on Antero's royalty payment obligations under the modified Class Leases, and whether those Class Leases, as modified or in their original form, comply with the holdings in <u>Wellman</u> and <u>Tawney</u>.

### iii. Modification Types (Paragraph 27 of Terry's Expert Report)

The Plaintiffs seek to exclude Terry's opinion that several Class Members executed modification agreements with Antero that amend or replace the original royalty provisions in the Class Leases, and that the L4 and L6 documents are examples of these

**ROMEO ET AL V. ANTERO**                                    **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

valid modification agreements. (Dkt. No. 296-1 at 10). They argue that the L4 and L6 documents referenced by Terry are not modifications to any Class Lease, but rather are separate lease agreements with royalty provisions that fall outside the Class definition.

In Antero's view, the L4 and L6 documents are valid modifications to certain royalty provisions in the Class Leases permitting the deduction of post-production expenses, and Terry's explanation of the various types of modifications will aid the jury's understanding[2] (Dkt. No. 304-2 at 10).

Terry's opinions as to how leases generally are modified, and in which scenarios Antero might seek such modifications, would aid the jury's understanding of how oil and gas leases may be amended by the parties over time. However, her opinions as to whether the L4 or L6 documents in fact modify the Class Leases, and what Antero's royalty payment obligations are under these documents, whether in their original form or as allegedly modified, amount to

---

[2] Antero also contends that L4 and L6 documents were included in its document production because they alter a Class Lease, but "to the extent Plaintiffs argue that such lease documents should be removed from the certified class, Antero does not object" (Dkt. No. 304-2 at n.11).

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

inadmissible legal conclusions on central questions of law in this case.

### iv. Gasoline Royalties (Paragraph 30 of Terry's Expert Report)

The Plaintiffs seek to exclude Terry's opinion that several of the Class Leases, including Romeo's 1984 lease, contain a provision regarding the amount of royalties a Class Members is to receive for NGLs, specifically gasoline (Dkt. No. 296-1 at 11). Although Terry's report acknowledges that the gasoline provision in such leases was excluded from the Class definition, she contends the provision remains "instructive to understand the basis on which Antero has calculated the value of extracted NGLs" (Dkt. No. 296-2 at ¶ 30). Particularly, Terry opines that the gasoline provision illustrates why the Class Members' royalties on NGLs cannot be uniformly calculated, given that each individual well calculation depends on the formulation of hydrocarbons in each well. Id.

According to the Plaintiffs, Terry's opinion on this issue is irrelevant because the gasoline provision does not modify Antero's royalty payment obligations to the Class Members under the royalty provisions of the Class Leases (Dkt. No. 296-1 at 11). Furthermore, they contend that the gasoline royalty provision is not included in the Class Definition and Antero is using Terry's opinions in an

14

ROMEO ET AL V. ANTERO                                        1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

attempt to resurrect its prior argument that this provision was improperly excluded from the Class Definition. Id. Finally, they argue that Terry's opinion on the gasoline royalty provisions conflicts with Tawney's holding, because no gasoline provision would negate Antero's obligation to pay natural gas royalties based upon the price received at the point of sale. Id.

Antero contends that the Plaintiffs have mischaracterized Terry's opinion on the gasoline royalty provisions. It asserts that Terry's opinion merely aims to help the trier of fact understand the basis for Antero's calculation of the value of extracted NGLs, such as gasoline, and to explain that leases generally pay royalties on the net value at the factory for the products extracted at a processing plant. Id.

As the Plaintiffs correctly point out, Terry's opinions regarding the gasoline royalty provisions in the Class Leases are irrelevant to any issue in this case. The Court has already excluded the gasoline royalty provisions from the Class Definition, and the Plaintiffs do not intend to argue that Antero breached the NGL royalty provisions in the Class Leases. Accordingly, Terry's testimony is not relevant and would not aid the trier of fact in deciding any of the issues in the case.

15

ROMEO ET AL V. ANTERO                                              1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

### v.   House Gas Provisions (Paragraph 31 of Terry's Expert Report) [3]

The Plaintiffs seek to exclude Terry's opinion that some of the Class Leases contain "house gas" provisions that alter Antero's royalty payment obligations (Dkt. No. 296-1 at 12). But Terry's opinions regarding whether such provisions alter Antero's obligations clearly attempt to interpret the parties' contract and are inadmissible. Furthermore, the house gas provisions are irrelevant to determining Antero's obligations under the Class Leases or its alleged breach of such obligations.

### vi.   Factors Influencing Natural Gas Processing and Sale

The Plaintiffs seek to exclude opinions Terry offers throughout her report that Antero's royalty payment obligations are affected by several factors, including whether the natural gas has been processed and where it is sold (Dkt. No. 296-1 at 12). Specifically, they object to Terry's opinion that when Antero sells processed gas at a point of sale located outside West Virginia it is permitted to deduct the cost of transporting the gas to that

---

[3]

In their motion to exclude, the Plaintiffs refer to Terry's house gas opinions in Paragraph 26. However, Terry's discussion of house gas is contained in Paragraph 31 of her expert report (Dkt. No. 296-2 at 10).

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

point of sale. Id. The Plaintiffs again respond that these opinions conflict with the holdings in Wellman and Tawney.

Antero counters that Terry's explanation of how the value of natural gas changes based on whether it is processed and where it is sold will aid the trier of fact in understanding the unique marketing challenges Antero faces in such instances. Moreover, it contends Terry's testimony is necessary to aid the jury in understanding the difference between the manner in which the term "point of sale" is being used by the Plaintiffs and how it is commonly used in the industry.

Terry's expert testimony describing how Antero processes natural gas, chooses which natural gas to process, extracts NGLs, calculates processing costs, sells natural gas in both its processed and raw forms, gathers and transports natural gas to various points of sale, and calculates transportation costs would aid the jury's understanding of the operation of the natural gas industry. Likewise, her opinions on the marketing conditions Antero faces at various points of sale located within West Virginia and beyond, the varying chemical formulations of the Plaintiffs' natural gas, the point of sale as it has historically been understood in the industry, and what a "market" has generally been

ROMEO ET AL V. ANTERO                                              1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

understood to mean in the industry also will aid the jury's understanding of the relevant market.

But her opinions regarding whether these factors alter Antero's royalty payment obligations under the Class Leases, and what the parties intended the term "point of sale" to mean in the Class Leases are inadmissible, as they amount to her interpretation of the terms in the Class Leases. Further, Terry may not opine on whether these factors preclude the Court's ability to address the common questions uniformly. Finally, Terry's opinion that Antero is permitted to deduct transportation costs for processed gas sold in distant markets goes to an ultimate issue in the case and therefore is inadmissible.

### vii. Determining Royalties Based on Industry Custom and Practice

The Plaintiffs seek to exclude Terry's opinion that Antero's royalty payment obligations under the Class Leases should be determined based upon "industry custom and practice" (Dkt. No. 296 at 12). The issue in this case is not Antero's compliance with industry standards in making royalty payments to the Class Members, but whether it has complied with the royalty provisions in the Class Leases in light of Wellman and Tawney's dictates. Therefore, Terry's opinions about whether Antero's royalty calculations meet

18

ROMEO ET AL V. ANTERO                                      1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

or exceed industry standards are irrelevant. And any testimony that the holdings in <u>Wellman</u> and <u>Tawney</u> do not apply to Antero's royalty payment obligations in this case is an inadmissible opinion.

### viii. Point of Sale (Paragraphs 60 and 73 of Terry's Expert Report)

Finally, the Plaintiffs seek to exclude Terry's opinion that their expert, Phend, has incorrectly calculated the Class Members' damages using the price Antero received at the actual "point of sale" rather than at a hypothetical "point of sale" (Dkt. No. 304-2 at 14-15). While Terry's testimony about how natural gas is bought and sold in the industry would aid the jury's general understanding of oil and gas industry practices, her opinion regarding the relevant "point of sale" under the Class Leases is an inadmissible legal opinion.

### D.   Terry's Proposed Testimony Regarding Class Certification

The Plaintiffs also seek to exclude Terry's opinions regarding the propriety of trying this case as a class action because they conflict with this Court's prior certification Order. <u>Id.</u> Alternatively, they argue that Terry's class certification opinions should be excluded because they rely on the contention that Antero does not have a common royalty payment obligation under the Class Leases. <u>Id.</u> Pointing to the fact that a court may alter or amend

19

ROMEO ET AL V. ANTERO                                              1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

its order certifying a class prior to the final judgment under Federal Rule of Civil Procedure 23(c)(1)(C), Antero argues that Terry's opinions on class certification would help the Court reevaluate the soundness of its prior decision (Dkt. No. 304-2 at 20-22).

While cognizant that it retains the discretion to alter or amend its previous class certification Order, the Court nevertheless concludes that any opinion Terry holds on this issue would not be helpful.

**E.  Terry's Proposed Testimony Regarding Phend's Damages Calculations**

Finally, the Plaintiffs challenge Terry's critique of their expert's calculation of the Class Members' damages.

**i.  Terry's qualifications**

The Plaintiffs seek to exclude Terry's opinion on damages because she is not an accountant and has never practiced in the field of accounting (Dkt. No. 296 at 15-16). This argument is unpersuasive. "The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702, advisory committee note to 2000 amendments. In weighing Terry's qualifications, the Court must consider the "full range" of her experience, "not just [her] professional qualifications." <u>Good</u>,

20

**ROMEO ET AL V. ANTERO**                                                        **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

310 F.R.D. at 282.

Although the Plaintiffs' observation that Terry has no formal training in accounting is accurate, she does possess over thirty (30) years of industry experience in marketing and valuing natural gas, as well as calculating royalty payments (Dkt. No. 304-2 at 15). Not only is all of this experience relevant to the issues in this case, it is worth noting that she also has been accepted by other courts as an expert on these issues and previously has critiqued Phend's expert opinions in similar cases. Id. at 15-16.

Nor is accounting expertise necessary to assess Phend's calculations because he does not rely on any specialized accounting principles in rendering his opinion. Rather, he employs "basic arithmetic functions performed by Microsoft Excel." Id. at 16-17. Therefore, given Terry's knowledge and decades of experience in valuing gas and calculating royalty payments, she is qualified to criticize Phend's calculations. Any lack of specialized accounting experience goes to the weight of her testimony rather than its admissibility.

ii. **Calculation Based on Volume of Gas Sold (Paragraph 71 of Terry's Expert Report)**

The Plaintiffs next argue that Terry's opinion that Phend was required to calculate the Class Members' damages based on the

21

ROMEO ET AL V. ANTERO                                    1:17CV88

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]

volume of gas sold rather than the volume of gas at the wellhead is erroneous. They contend that Antero failed to provide sufficient data for Phend to calculate the Class Members' damages based on the volume of gas sold (Dkt. No. 296 at 16). In its response, Antero asserts that Phend's calculation misstates the alleged damages because it is not required to pay royalties on unsold quantities of gas, and the Plaintiffs did not request data regarding the volumes of gas sold from the Plaintiffs' wells (Dkt. No. 304-2 at 17-18).

Under West Virginia law, lessees are not required to pay royalties on unsold or lost gas volumes. See W.W. McDonald Land Co. v. EQT Prod. Co., 983 F. Supp. 2d 790, 802 (S.D.W. Va. 2014) ("Requiring lessees to pay royalties on unsold gas is illogical and inequitable."). Consequently, the Plaintiffs are not entitled to receive royalty payments without deductions for an amount of gas larger than the volume actually sold by Antero. Terry's critique of Phend's calculation therefore is admissible.

Nevertheless, in the time since Antero first disclosed Terry's report the Plaintiffs presumably have requested the relevant data regarding the volume of gas actually sold by Antero (Dkt. No. 304-2 at 18) ("Regardless of the data Antero may or may not have produced in discovery regarding volumes of gas, which, at the time of

22

ROMEO ET AL V. ANTERO                                          1:17CV88

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]

[Terry's] report, Plaintiffs had not requested...."). And, assuming Antero will produce or already has produced accurate data pursuant to such a request, Phend has or will amend his damages calculation using the volume of gas actually sold by Antero, likely making this dispute between the parties moot.

### iii. Ad Valorem Taxes (Paragraph 75 of Terry's Expert Report)

The Plaintiffs argue that Terry should not be permitted to opine on Phend's inclusion of Antero's ad valorem tax deductions in his damages calculation, because whether ad valorem taxes are post-production costs is a question of law to be decided by the Court (Dkt. No. 296-1 at 16). Antero, however, contends that Terry's explanation of terms such as "post-production costs" and "ad valorem taxes" would aid the jury's understanding of the specialized oil and gas industry (Dkt. No. 304-2 at 18). The Court will allow testimony explaining industry terms and describing how taxes typically are assessed in the oil and gas industry, but excludes any opinions as to whether, under West Virginia law, ad valorem taxes are properly considered post-production costs.

### iv. Overstatement of Damages (Paragraph 76 of Terry's Expert Report)

The Plaintiffs seek to exclude as speculative Terry's opinion

ROMEO ET AL V. ANTERO                                        1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

that Phend overstated the Class Members' damages (Dkt. No. 296-1 at 16). Terry's opinions, however, are based on Phend's deposition testimony (Dkt. No. 304-2 at 18-19) and, therefore, are not speculative.

### v.   Market Value of Natural Gas at the Well or Net Factory Value of NGLs (Paragraph 77 of Terry's Expert Report)

The Plaintiffs seek to exclude Terry's criticism of Phend's exclusion of information that will aid the jury in calculating the market value of natural gas at the well or the net factory value of the extracted NGLs (Dkt. No. 296-1 at 17). Terry's opinion that such information is necessary to calculate damages is inadmissible because it seeks to identify the intended point of natural gas valuation under the Class Leases, an issue relating to the applicability of <u>Wellman</u> and <u>Tawney</u> to the Class Leases. If <u>Wellman</u> and <u>Tawney</u> apply, Antero is obligated to pay natural gas royalties based on the price received at the point of sale, not on the market value of natural gas at the well, or on the net factory value received for the extracted NGLs.

### vi.  Forecast of Damages between February 2020 and Trial (Paragraph 78 of Terry's Expert Report)

The Plaintiffs seek to exclude Terry's criticism of Phend's projection of the amount of the Class Members' damages accrued

ROMEO ET AL V. ANTERO                                                    1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

between February 2020 and the trial date. They contend that Terry
did not review Antero's updated accounting data to determine the
accuracy or inaccuracy of Phend's projections. They also assert
that Phend will rely on these projections only until Antero
supplements its production of Class Member royalty accounting data
(Dkt. No. 296-1 at 16). Antero, however, contends that Terry had no
need to review recent accounting data to determine the accuracy of
Phend's projections because, in his deposition, Phend admitted his
projected damages calculation for the disputed months was not "done
in conjunction with an engineer" and likely would not meet the
standards upon which Certified Public Accountants would rely (Dkt.
No. 296-1 at 16).

Phend's projections of accrued damages for the months between
February 2020 and the trial may not meet accounting industry
standards, but since he does not intend to present these
projections as such or rely on them at trial, this issue is moot.
As Terry's report concedes, Phend will replace his projections with
a calculation of actual damages as trial approaches and after he
receives the required supplemental Class Member royalty accounting
data from Antero (Dkt. No. 296-2).

ROMEO ET AL V. ANTERO                                          1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

---

### vii. Potential Disputes Between Current and Former Royalty Owners (Paragraphs 79. 80, 81, and 82 of Terry's Expert Report)

Finally, the Plaintiffs seek to exclude Terry's opinion that Phend failed to provide a methodology to resolve potential disputes between current and former royalty owners that may arise in determining which owners may be entitled to damages for Antero's alleged underpayment during the class period (Dkt. No. 296-1 at 17). According to the Plaintiffs, Phend calculated each Class Member's damages based on Antero's royalty accounting data, which includes Antero's deductions for each Class Member during the class time period. Id. at 16-17.

Tellingly, nothing suggests that Antero misstated the deductions for each class member. Id. But Antero maintains that, while Phend's damages calculation accounts for individual Class Member damages, it is does not divide those alleged damages between current and former royalty owners during the class time period (Dkt. No. 304-2 at 20).

Any opinions offered by Terry containing legal conclusions intended to undermine class certification will not aid the jury's understanding and therefore are inadmissible. However, opinions

ROMEO ET AL V. ANTERO                                    1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

describing how and why oil and gas ownership interests are transferred, the types of transfers common in the industry, and how Antero determines which owners should receive royalty payment would aid the jury's understanding of the natural gas industry and are admissible.

The Plaintiffs further seek to exclude Terry's observation that Plaintiffs Rine and Miller, failed to notify Antero of their inherited oil and gas interests, and that Antero therefore would have continued to pay royalties to their predecessors-in-interest (Dkt. No. 296 at 18). As the Plaintiffs assert, however, this information is irrelevant because Antero did not produce any gas from a well owned by either Rine or Miller until after their interests had been verified.

**IV. CONCLUSION**

For the reasons discussed, Terry is qualified to testify and offer opinions as follows:

1.   She may explain industry terms of art and their custom and usage within the oil and gas industry;

2.   She may explain how natural gas is marketed, what a market enhancement clause is, and the purpose of such a clause in the natural gas industry;

27

ROMEO ET AL V. ANTERO                                        1:17CV88

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

3.   She may explain how natural gas leases generally
     are modified and in which scenarios Antero may seek
     such modifications;

4.   She may explain how Antero processes natural gas,
     chooses which natural gas to process, extracts
     NGLs, sells natural gas in both its processed and
     raw forms, gathers and transports natural gas to
     various points of sale, and that processing and
     transportation costs are incurred;

5.   She may discuss the marketing conditions faced by
     Antero at various points of sale located within
     West Virginia and beyond, the varying chemical
     formulations of the Plaintiffs' natural gas, and
     what a "market" has generally been understood to
     mean in the industry;

6.   She may explain how natural gas is bought and sold
     in the industry;

7.   She may explain how taxes are assessed in the oil
     and gas industry;

8.   She may opine that Phend was required to calculate
     the Class Members' damages based on the volume of

**ROMEO ET AL V. ANTERO**                                    **1:17CV88**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT
WITNESS TESTIMONY OF KRIS TERRY [DKT. NO. 296]**

---

gas sold rather than the volume of gas at the wellhead; and

9. She may explain how and why oil and gas ownership interests are transferred, the types of transfers common in the industry, and how Antero determines which owners will receive royalties.

But Terry may not offer opinions on Antero's duty to pay royalties under the Class Leases, whether the holdings in <u>Wellman</u> and <u>Tawney</u> apply to the Class Leases' royalty provisions, or whether the standards established in <u>Wellman</u> and <u>Tawney</u> for permissible deductions of post-production costs from royalty payments have been satisfied. Nor may she offer her opinion on the appropriateness of the Court's Preliminary Order of Class Certification.

The Plaintiffs' Motion to Exclude (Dkt. No. 296) is therefore **GRANTED-IN-PART** and **DENIED-IN-PART.**

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: January 21, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

29