IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKLIN ROMEO,
Individually and on behalf
of others similarly situated;
SUSAN S. RINE,
Individually and on behalf
of others similarly situated;
DEBRA SNYDER MILLER,
Individually and on behalf
of others similarly situated,

        Plaintiffs,

v.                                CIVIL ACTION NO. 1:17CV88
                                    (Judge Keeley)

ANTERO RESOURCES CORP.,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO STAY [DKT. NO. 368]**

In this breach of contract class action, the plaintiffs, Jacklin Romeo ("Romeo"), Susan S. Rine ("Rine"), and Debra Snyder Miller ("Miller") (collectively, "the Plaintiffs"), individually and on behalf of others similarly situated, allege that the defendant, Antero Resources Corporation ("Antero"), breached its obligations under the royalty provisions of two types of lease agreements by improperly deducting post-production costs and failing to pay royalties based upon the price received at the point of sale. On June 18, 2021, Antero moved to stay this action pending final resolution of its appeal in Corder v. Antero Resources Corp., 1:18CV30 (Lead Case). After hearing oral argument on July 7, 2021,

and for the reasons discussed below, the Court **GRANTED** Antero's motion (Dkt. No. 368) and **STAYED** this case.

## I.     BACKGROUND

### A.     Factual Background

Each of the Plaintiffs alleges ownership of an oil and gas interest in Harrison County, West Virginia, subject to an existing oil and gas lease under which the lessee's interest has been assigned to Antero (Dkt. No. 31 at 2).

Romeo is the assignee of a portion of the lessors' interest under a March 14, 1984 lease agreement between lessors Jessie J. Nixon, Betty Nixon, Mary Alice Vincent, and Hubert L. Vincent, and lessee Clarence W. Mutschelknaus ("the Mutschelknaus Lease"). Id. at 6. Antero acquired the lessee's rights and obligations sometime prior to January 1, 2009. The royalty provision of the Mutschelknaus Lease contains the following language:

> In consideration of the premises, the said [Lessee] covenants and agrees: First, to deliver monthly to the credit of the Lessors, their heirs or assigns, free of costs, in a pipeline, to which Lessee may connect its wells, Lessors' proportionate share of the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and second, to pay monthly Lessor's proportionate share of the one-eighth (1/8) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8) of the net value at the factory of the gasoline and other gasoline products manufactured from casinghead gas.

Case 1:17-cv-00088-IMK-MJA   Document 376   Filed 07/12/21   Page 3 of 12   PageID #: 17048

**ROMEO, ET. AL V. ANTERO**                                              **1:17CV88**
**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO STAY [DKT. NO. 368]**

Id.

Rine and Miller are assignees of portions of the lessors' interest under an October 19, 1979 lease between lessors Lee H. Snyder, and Olive W. Snyder, and lessee Robert L. Matthey, Jr. ("the Matthey Lease"). Id. at 6-7. Antero was assigned the lessee's interest sometime prior to July 17, 2012. Id. at 7-8. The royalty provision of the Matthey Lease contains the following language:

> (a) Lessee covenants and agrees to deliver to the credit of the Lessor, his heirs or assigns, free of cost, in the pipe line to which said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.
>
> (b) Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of the same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly.

Id. at 8-9.

On May 15, 2017, the Plaintiffs filed a class action complaint asserting a breach of contract claim related to Antero's alleged failure to pay them a full 1/8th royalty payment for their natural gas interests. Gas produced under the leases at issue (the "Class Leases") consists of "wet gas" (saturated with liquid hydrocarbons and water) that may be processed to obtain marketable "residue gas." This wet gas also contains valuable liquid hydrocarbon

components (ethane, butane, isobutane, propane, and natural gas) ("NGLs") that may be extracted and fractionated prior to sale.

The Plaintiffs contend that because neither of the Class Leases royalty provisions expressly permits such deductions West Virginia law imposes a duty upon Antero to calculate royalties based on the price it receives from third parties for the residue gas and NGLs, without deductions. They assert that despite this duty Antero has deducted various post-production costs for residue gas and NGLs from their royalty payments.

### B.  Procedural History

On March 23, 2020, pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court entered a Class Certification Order, which defined the following Class:

> Persons and entities, including their respective successors and assigns, to whom Antero has paid royalties ("Royalties") on Natural Gas, including natural gas liquids, produced by Antero from wells located in West Virginia at any time since January 1, 2009, pursuant to Leases which contain either of the following gas royalty provisions: (a) [Lessee] covenants and agrees "to pay monthly Lessors' proportionate share of the one-eighth (1/8) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm"; or (b) "Lessee covenants and agrees to pay Lessor as royalty for the native gas from each and every well drilled on said premised producing native gas, as amount equal to one-eighth (1/8) of the gross proceeds received from the sale of the same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly."

>     The Class excludes: (1) agencies, departments, or instrumentalities of the United State of America; (2) publicly traded oil and gas exploration companies; (3) any person who is or has been a working interest owner in a well produced by Antero in West Virginia; and (4) Antero.

(Dkt. No. 152 at 42-43). The Court also identified four common questions of law and fact:

>   1)  Do Wellman and Tawney apply to both market value and proceed leases?
>
>   2)  If so, do the leases at issue, as modified by any subsequent modifications (if any), have the specific language required by Wellman and Tawney that would allow Antero to deduct post-production expenses from the Plaintiffs' royalty payments?
>
>   3)  If not, did Antero unlawfully deduct postproduction expenses from the Plaintiffs' royalty payments?
>
>   4)  If so, how did Antero calculate these deductions?

Id. at 32. The Fourth Circuit denied Antero's interlocutory appeal of the Court's Class Certification Order on April 15, 2020 and this Court denied Antero's motion to amend the Order on May 11, 2020 (Dkt. Nos. 171; 176; 195).

On February 12, 2021, the parties filed cross motions for summary judgment on the Plaintiffs' breach of contract claim and the Plaintiffs moved for summary judgment on each of Antero's eighteen (18) affirmative defenses (Dkt. Nos. 353, 354, 355). These motions are fully briefed and pending disposition.

## II.   DISCUSSION

On June 18, 2021, Antero moved to stay this action pending final resolution of its appeal in Corder, arguing that the outcome of that appeal will impact this litigation (Dkt. No. 368). According to Antero, the Class Lease royalty provisions in this case are identical to several of the royalty provisions at issue in Corder and, to the extent that those Class Leases that have been modified to include a market enhancement clause are properly before the Court, that market enhancement clause is identical to the one at issue in Corder. The Plaintiffs oppose Antero's motion to stay, arguing that Antero "seek[s] to stay this litigation for the sole purpose of delaying the [Plaintiffs'] recovery of substantial monetary judgment against Antero" (Dkt. No. 370 at 4).

In Corder, the plaintiffs alleged that Antero had improperly deducted post-production costs from royalty payments due them under several oil and gas leases. In a Memorandum Opinion and Order entered on May 12, 2021, the Court granted in part the plaintiffs' Motion for Summary Judgment and denied Antero's Motion for Summary Judgment (Civil Action No. 1:18CV30, Dkt. No. 242). Specifically, the Court held that the market value leases were governed by and failed to satisfy the heightened specificity requirements established in Wellman v. Energy Resources, 557 S.E.2d 254 (W. Va. 2001), and Tawney v. Columbia Natural Resources, 633 S.E.2d 22 (W.

Va. 2006). Id. at 30-31. The Court further held that the market enhancement clause in Corder was ambiguous and failed to satisfy Tawney's second prong because it did not identify with particularity the costs that Antero may deduct from certain plaintiffs' royalty payments. Id. at 17-23.

## A. Applicable Law

A motion to stay is committed to the sound discretion of the district court. Gisper v. Simplicity, Inc., 2011 WL 128776, at *3 (N.D.W. Va. Jan. 14, 2011); see also Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936)(holding that the decision whether to grant a stay is discretionary, and within the inherent power of the court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). Relevant factors for the Court's consideration include "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." Tolley v. Monsanto Co., 591 F.Supp.2d 837, 844 (S.D. W. Va. 2008) (internal citation omitted).

**B.      Analysis**

Here, the interests of judicial economy and the potential hardship imposed upon Antero if its motion is denied weigh heavily in favor of staying this case.

### 1.     Interests of judicial economy

Antero asserts that judicial economy is best served by staying this case pending resolution of the appeal in Corder because the Fourth Circuit's decision regarding the applicability of Wellman and Tawney to royalty provisions identical to those at issue here will impact the outcome of this action (Dkt. No. 368-1 at 7). Additionally, Antero argues that, if this case is not stayed and the Fourth Circuit reverses or vacates the decision in Corder, the Court will be required to reconsider any summary judgment decision in this action, which would lead to confusion among the Plaintiffs and wasted resources. Id.

The Plaintiffs, however, contend that Antero has "fail[ed] to identify any specific question of West Virginia law which might be at issue in the Corder appeal, or how the resolution of any such issue would impact any issue of substance in this case" (Dkt. No. 370 at 3). The Court finds this argument disingenuous.

In Corder, the Court ruled that market value leases are subject to the dictates of Wellman and Tawney. This is the first common question of law identified in Romeo, and one that the

parties discuss at length in their cross motions for summary judgment. Should the Fourth Circuit reverse or vacate the decision in Corder, this Court also would have to reconsider the applicability of Wellman and Tawney to the leases in this case.

Further, as Antero contends, the Romeo Class Lease royalty provisions are identical to several of the royalty provisions at issue in Corder. For example, the Mutschelknaus Lease in this action contains the same royalty provision as Lease 9 in Corder, and the Matthey Lease in this action contains the same royalty provision as Leases 6 and 7 in Corder. In Corder, the Court found that Leases 6, 7, and 9, in their unmodified form were governed by Wellman and Tawney and did not allow Antero to allocate any portion of post-production costs to the royalty payees.

As well, several of the Class Leases in this case have been modified to include the same market enhancement clause at issue in Corder. There, the Court found that the market enhancement clause was ambiguous and failed to satisfy the second prong of the Tawney analysis. Antero argues that, to the extent that these modified Class Leases are part of the Class here, the Fourth Circuit's decision in Corder would impact any analysis of Antero's obligation under this clause.

The Court recognizes that very few of the Class Leases in this case contain the modification at issue in Corder.

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO STAY [DKT. NO. 368]**

Nevertheless, because Corder also discussed both Class Lease royalty provisions in their unmodified form, each of the Class Leases here may be impacted by the Fourth Circuit's decision in Corder. Overall, therefore, this factor weighs heavily in favor of staying the case.

### 2. Hardship to Antero

Antero next contends that it faces actual and immediate irreparable harm if a stay is denied because it will be required to expend substantial resources to prepare for trial and, if unsuccessful, to file an appeal on nearly identical issues (Dkt. No. 368 at 8). The Plaintiffs ignored this factor in their briefing.

This factor weighs in favor of staying the case. If this case proceeds to trial, and the Fourth Circuit thereafter reverses or vacates this Court's decision in Corder, both parties will have unnecessarily incurred the expense of trial.

### 3. Potential prejudice to the Plaintiffs

Finally, Antero argues that the Plaintiffs will not be harmed if this case is stayed because there have been no meaningful settlement negotiations, the Fourth Circuit will resolve the Corder appeal in a timely manner, and any delay will be minimal given the duration of this litigation. Id. at 8-9. Antero also

states that a stay will actually benefit the Plaintiffs because they will be spared the expense of litigating an appeal. Id.

The Plaintiffs point out, however, that Antero has moved to stay the case only six (6) weeks before a trial for which they have been diligently preparing. This case has been pending since May 15, 2017, and delaying its final disposition for an indefinite period of time pending Antero's appeal in a separate action will prejudice the Plaintiffs as they may be entitled to damages from Antero in this case. Antero noticed its appeal in Corder on June 24, 2021, an appellate case was opened on June 28, 2021, but no briefing schedule has yet been entered. Therefore, this factor weighs slightly against staying the case.

Although there is a looming trial date and the parties have fully discovered this case, the Corder appeal will address the heartland issue in this litigation, whether Wellman and Tawney apply to both market value and proceeds leases. Neither party denies that resolution of this question by the Fourth Circuit in Corder will have material effect on the outcome of this litigation.

Thus, while the Plaintiffs may suffer some prejudice by a stay in this case, such prejudice is not unfair. The Court has not yet decided summary judgment and the parties, who have not yet participated in a final pretrial conference, will be spared any further expense of litigation. The slight prejudice to the

Plaintiffs is outweighed by the interests of judicial economy in avoiding duplicative litigation and the irreparable harm Antero would incur should its motion be denied.

### III. CONCLUSION

For the reasons discussed, the Court:

- **GRANTED** Antero's motion to stay (Dkt. No. 368);

- **STAYED** this case pending resolution of the appeal in Corder v. Antero Resources Corp., Civil Action No. 1:18CV30 (Lead Case); and

- **DIRECTED** the parties to advise it when the Fourth Circuit Court of Appeals issues a final decision in Corder.

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: July 12, 2021

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE