IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKLIN ROMEO et al.,

     Plaintiffs,

  v.                           CIVIL NO. 1:17-CV-88
                                     (KLEEH)

ANTERO RESOURCES CORPORATION,

     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]

Pending is the *Class Members' Motion for Summary Judgment on Each of Defendant's Eighteen Affirmative Defenses* [ECF No. 437]. For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**. For good cause, the class members' motion for leave to submit an additional exhibit is also **GRANTED** [ECF No. 454], and said exhibit is deemed **FILED** [ECF No. 454-1].

### I.     PROCEDURAL HISTORY

On October 2, 2017, the plaintiffs, Jacklin Romeo, Susan S. Rine, and Debra Snyder Miller, individually and on behalf of all others similarly situated (together, "Plaintiffs"), filed a second amended class action complaint, which is the governing complaint in this case. See ECF No. 31.  On September 19, 2018, Defendant Antero Resources Corporation ("Antero") filed an answer.  See ECF No. 39.  On March 23, 2020, this Court certified the proposed

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

class.  See ECF No. 152.  On June 11, 2025, the Supreme Court of Appeals of West Virginia answered certified questions.  See Romeo v. Antero Res. Corp, 917 S.E.2d 26 (W. Va. June 11, 2025).  After the parties could not agree on a schedule to govern the case moving forward, the Court entered a schedule on July 30, 2025.  See ECF No. 436.  Plaintiffs filed a motion for summary judgment with respect to all affirmative defenses asserted by Antero.  The motion is fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial."  Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citations omitted).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). At its core, the summary-judgment process examines whether a trial is needed. See id. at 250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

## III. DISCUSSION

As a preliminary matter, in its response, Antero moves to withdraw, and asks the Court to strike, all but four of its affirmative defenses. Plaintiffs reply that granting summary judgment in their favor, as opposed to withdrawing or striking, is more appropriate. Given the timing of Antero's attempt to withdraw the affirmative defenses, the Court agrees with Plaintiffs that they are entitled to summary judgment on the affirmative defenses

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

that Antero attempts to withdraw: Affirmative Defenses 1–8, 12, 13, 15, and 16–18.  The only affirmative defenses at issue are Affirmative Defenses 9, 10, 11, and 14.  See ECF Nos. 31, 39.  For the reasons discussed below, the Court finds that Plaintiffs are entitled to summary judgment on those affirmative defenses as well.

A.    **Affirmative Defenses 9 (Payment and Release), 10 (Accord and Satisfaction), and 11 (Res Judicata)**

In Affirmative Defense 9, Antero asserts that "Plaintiffs' and/or putative class members' claims may be barred by the doctrines of payment and/or release."  ECF No. 39.  Under West Virginia law, to prevail on an affirmative defense of payment and release, Antero must prove that one or more members of the certified class released their royalty underpayment breach of contract claims against Antero, as alleged in Plaintiffs' operative second amended class action complaint.  See McDaniel v. Kleiss, 503 S.E.2d 840, 847 (W. Va. 1998) (recognizing that a release is "the giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised and enforced").  Plaintiffs assert that Antero has not produced any evidence that it reimbursed any of the class members for the royalty underpayments at issue or that any of the class

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

members released their claims against Antero for the royalty underpayments at issue.

In Affirmative Defense 10, Antero asserts that "Plaintiffs' and/or putative class members' claims may be barred by the doctrine of accord and satisfaction."  ECF No. 39.  To show an accord and satisfaction, the person asserting the defense must prove the following:

> (1) [c]onsideration to support an accord and satisfaction; (2) an offer of partial payment in full satisfaction of a disputed claim; and (3) acceptance of the partial payment by the creditor with full knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all.

Richards v. Kees, 572 S.E.2d 898, 899 (W. Va. 2002) (citation omitted).  Plaintiffs assert that Antero has not produced any evidence that it reached an accord and satisfaction with any class member regarding the royalty underpayment claims at issue.

In Affirmative Defense 11, Antero asserts that "Plaintiffs' and/or putative class members' claims may be barred by the doctrine of res judicata."  ECF No. 39.  The doctrine of res judicata "bars a party from suing on a claim that has already been litigated to final judgment by the party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

or defense which could have been asserted in that action." See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., 803 S.E.2d 519, 530 (W. Va. 2017).  Plaintiffs assert that Antero has not identified or produced any final judgment that adjudicated any class member's royalty underpayment claims against Antero in this case.

In response, Antero provides information regarding settlements in two cases: Cather v. Seneca-Upshur Petroleum, Inc., 1:09-CV-139 (N.D.W. Va.), and Antero Resources Corporation v. Bridge, No. 13-C-305-3 (Cir. Ct. Harrison Cnty.).  Antero asserts that these settlements impact the claims of Plaintiff Rine and Plaintiff Miller, as well as several other members of the certified class.  The Cather settlement resolved and released certain royalty owners' claims relating to the calculation and payment of oil and gas royalties, including breach of contract for the deduction of post-production costs.  See Cather Final Order, No. 1:09-CV-139, ECF No. 178, at 5.  The Cather settlement agreement, Antero argues, presented settlement class members with two settlement options and released Seneca-Upshur Petroleum, Inc. ("Seneca-Upshur") and its successors.  See Cather Settlement Agreement, ECF No. 139-1, at 29-31.  Antero is a successor to Seneca-Upshur Petroleum, LLC. See Answer, ECF No. 39, at (¶ 23 (admitting same).

ROMEO V. ANTERO                                                    1:17-CV-88

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

Antero argues that the certified class members on leases for which "Option A" was chosen include Plaintiff Rine, Plaintiff Miller, and 28 additional Romeo class members.  See ECF No. 446-5.  This Court's approval of the class action settlement and the leases subject thereto are a matter of public record.  See Cather Final Order, No. 1:09-CV-139, ECF No. 178; see also Cather Order Granting Approval, No. 1:09-CV-139, ECF No. 190 (approving recordation of the list of leases subject to Option A in each county in which the properties subject thereto are located).

Finally, Antero argues that another certified class member has entered into a confidential settlement agreement with Antero that likely affects her claims here.  See Bridge Dismissal Order, ECF No. 443-1.  For all of these reasons, Antero argues that there are genuine issues of material fact regarding Antero's affirmative defenses of payment and release, accord and satisfaction, and res judicata, so Plaintiffs are not entitled to summary judgment on Affirmative Defenses 9, 10, and 11.

In sum, Antero relies on the following evidence to argue that summary judgment is improper:

(1)  The final order approving the Cather class settlement, dated May 31, 2012, No. 1:09-CV-139, ECF No. 178 (the "Cather Final Order");

ROMEO V. ANTERO                                                    1:17-CV-88

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF
DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

---

(2) The <u>Cather</u> class settlement agreement, dated July 1, 2011, No. 1:09-CV-139, ECF No. 139-1 (the "<u>Cather</u> Settlement Agreement");

(3) The <u>Cather</u> defendants' motion for approval of attached Exhibit 1, and directing recordation of Exhibit 1, dated January 16, 2014, No. 1:09-CV-139, ECF No. 187 (the "<u>Cather</u> Motion for Approval");

(4) The <u>Cather</u> order granting the defendants' motion for approval and recordation of Exhibit 1, dated April 9, 2014, No. 1:09-CV-139, ECF No. 190 (the "<u>Cather</u> Order Granting Approval");

(5) Antero's supplemental response to Interrogatory No. 11 of Plaintiffs' second interrogatories, ECF No. 446-5; and

(6) The agreed dismissal order in <u>Bridge</u>, dated September 14, 2015, ECF No. 443-1 (the "<u>Bridge</u> Dismissal Order").

In reply, Plaintiffs argue that Antero was not a defendant in <u>Cather</u>, that <u>Cather</u> resolved the royalty underpayment claims of designated class members against the named defendants only through November 4, 2010, and that <u>Cather</u> did not resolve the royalty underpayment claims of any of the <u>Romeo</u> class members against Antero. Plaintiffs argue that the <u>Cather</u> Final Order and the <u>Cather</u> Settlement Agreement do not set forth any facts that establish any of the required elements of Antero's affirmative

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

defenses 9, 10, and 11.  Plaintiffs also argue that the Bridge Dismissal Order contains no proof that class member Kimberly Smith released any part of the royalty underpayment claims against Antero which are at issue in this litigation.  Plaintiffs argue that Antero has not identified any statement in any of the Cather exhibits that constitutes a release by any members of the Romeo certified class.

Plaintiffs assert that the Cather class members who selected Option A were limited to those identified in the "Owner Name" column in an exhibit attached to the Cather Motion for Approval. See Cather Motion for Approval, No. 1:09-CV-139, ECF No. 187.  In their motion, the Cather defendants stated, in pertinent part,

> Seneca-Upshur prepared the attached Exhibit 1 identifying each Covered Lease for which the Class Member selected Settlement Option A. The Class Members who elected Settlement Option A and their respective royalty interest is set forth under the columns entitled "Owner Name" and "Interest."  In those instances where all Class Members entitled to royalties under a given Covered Lease did not elect Option A, only those royalty owners who made the election are identified on Exhibit 1.

Id. at 3.  The same information was also set forth in the Cather Order Granting Approval. Cather Order Granting Approval, No. 1:09-CV-139, ECF No. 190.  Plaintiffs argue that a comparison of the "Owner Name" column to the Romeo certified class confirms that

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

only five members of the Romeo certified class selected Option A: Nicholas Ward Stone, Donald Brooks Fox, Emma M. Lamb, Dennis Powell, and Megan Campbell Deem.

Plaintiffs further argue that the selection of Option A did not alter Antero's royalty payment obligations to the five Romeo class members who selected it. Rather, they argue, the five class members agreed that from and after November 3, 2010, (1) their royalties "may be calculated on volumes actually sold for which Seneca-Upshur receives proceeds" (Cather Motion for Approval, No. 1:09-CV-139, ECF No. 187); (2) Seneca-Upshur was obligated to pay them royalties based upon prices it received on its sale of natural gas products at its Point of Sale (id. at 3); and (3) "point of sale" was defined as "that point where the gas, produced from a well on a Covered Lease, enters the receipt meter of an unaffiliated third-party gathering, transmission, or pipeline system, and at which time title and ownership to such gas passes to an unaffiliated third party buyer (id.). Plaintiffs argue that the five Romeo class members' selection of Option A did not alter Antero's royalty payment obligations to them under the applicable Mutschelknaus or Matthew royalty provisions in their class leases because (1) under the applicable Mutschelknaus and Matthew royalty provisions set forth in the five class members' leases, Antero

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

"may not deduct" from Plaintiffs' royalties "a proportionate share of the costs incurred in processing, fractionating, and transporting residue gas and natural gas liquids to the point of sale," see Syl. Pt. 8, Romeo, 917 S.E.2d 26 (citation omitted); (2) Option A did not alter that obligation, particularly because Antero's title to the residue gas and natural gas liquids that Antero produced from class wells and sold to third-party purchasers transferred at Antero's point of sale of the residue gas and natural gas liquids to such purchasers, Schopp Dep., ECF No. 446-8, at 21:24-23:18, 46:5-48:15; and (3) all of the Romeo class members' damages have been determined based upon the volumes of residue gas and natural gas liquids sold by Antero to purchasers of such natural gas products at the point of sale, Fifth Supp. to Phend Report, ECF No. 446-7, at ¶¶ 4 and 15 and Exh. A.

Plaintiffs further argue that Antero has not submitted any evidence that the Bridge settlement agreement resolved any part of Kimberly Smith's royalty underpayment claims against Antero that are at issue in this case. Plaintiffs point out that the Bridge Dismissal Order does not set forth any of the terms of Antero's settlement agreement with Kimberly Smith. See Bridge Dismissal Order, ECF No. 443-1. Plaintiffs argue that the evidence submitted regarding Cather and Bridge does not prove any of the required

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

elements of Antero's accord and satisfaction defense. Finally, Plaintiffs argue that Antero's evidence does not include any such judgment to prove res judicata.

After considering the record and the parties' arguments, the Court agrees with Antero that summary judgment is inappropriate with respect to Affirmative Defenses 9, 10, and 11. Antero has produced evidence that Antero is a successor to Seneca-Upshur. At least five Romeo class members have released claims against Seneca-Upshur and its successors relating to the calculation and payment of oil and gas royalties, including breach of contract for the deduction of post-production costs. Accordingly, at this stage, Plaintiffs are not entitled to summary judgment on Affirmative Defenses 9, 10, and 11.

**B.    Affirmative Defense No. 14 – Treatment as a Class Action**

In Affirmative Defense 14, Antero asserts that "Plaintiffs are not appropriate class representatives, and this action is not appropriate for treatment as a class action." ECF No. 39. Plaintiffs contend that this Court rejected those arguments when it granted the motion for class certification on March 23, 2020. See ECF No. 152. Plaintiffs also point out that on April 15, 2020, the United States Court of Appeals for the Fourth Circuit denied

ROMEO V. ANTERO                                                        1:17-CV-88

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

Antero's petition for permission to appeal the order. See ECF No. 171.

In response, Antero maintains its argument (which it has asserted throughout this case) that the case is unsuitable for class certification and that the class representatives are inappropriate. Antero argues that payees holding subsequent modifications are not included in the class and that many class members were likely paid royalties at least as much as the actual sales price or even overpaid. In other words, Antero argues that it has individualized defenses to each of those class members' claims based on their actual payment history. Accordingly, Antero argues, the predominance issues posed by the use of a universal damages theory as opposed to individualized analyses of harm underscores the impropriety of class treatment in this case.

Upon review, the Court agrees with Plaintiffs' position. This Court has previously considered and rejected Antero's arguments that class certification is inappropriate. The class has been certified. Plaintiffs are entitled to judgment as a matter of law with respect to Affirmative Defense 14.

### C.    Plaintiffs' Claim Relating to the 1983 Lease

In its response, Antero argues that because Plaintiffs have withdrawn their claims arising from the 1983 Lease and Antero has

13

ROMEO V. ANTERO                                                    1:17-CV-88

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EACH OF DEFENDANT'S EIGHTEEN AFFIRMATIVE DEFENSES [ECF NO. 437]**

withdrawn its affirmative defense regarding the same, the Court should also strike allegations pertaining to the 1983 Lease in the second amended complaint to avoid confusing the issues at trial. In reply, Plaintiffs oppose the request, asserting that the allegations provide relevant factual background to Plaintiff Romeo's mineral interests and her lessor's interests under the March 14, 1984 Lease referenced in Paragraph 4 of the second amended complaint. At this stage, especially given the small amount of briefing dedicated to the issue, the Court finds that striking the information would be premature, and the request is denied.

### IV.  CONCLUSION

For the reasons discussed above, the *Class Members' Motion for Summary Judgment on Each of Defendant's Eighteen Affirmative Defenses* [ECF No. 437] is **GRANTED IN PART** and **DENIED IN PART.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 31, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

14